Shenandoah Rachel **MORALES**,
Appellant,

v.

**UNITED STATES of America**,
Appellee.

No. 22656.

United States Court of Appeals
Ninth Circuit.

Feb. 4, 1969.

---

* Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

Norman J. Kaplan (argued), Los Angeles, Cal., for appellant.

Phillip W. Johnson (argued), Asst. U. S. Atty., Edwin L. Miller, Jr., U. S. Atty., San Diego, Cal., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and CRARY, District Judge.*

MERRILL, Circuit Judge:

Appellant was convicted of importation and concealing of heroin and cocaine in violation of 21 U.S.C. §§ 173 and 174 on the basis of narcotics secured as the result of a border search of her vagina. She has taken this appeal from judgment. The question is whether, under the circumstances of this case, the search was reasonable.[1] We conclude that it was not and that appellant's motion to suppress the heroin should have been granted.

The preliminary search of appellant's person was made by a woman customs clerk. Appellant was made to disrobe. She was made to bend over and expose her vaginal area. Something "sort of like a bubble" as observed protruding from the vagina. She was then taken to a physician who, from examination of her eyes and limbs, found no indication that she was under the influence of narcotics or had been a user. The vaginal search followed, revealing three packets of heroin and one of cocaine.

Rivas v. United States, *supra*, footnote 1, recognizes that to justify a border search of body cavities there must be a "clear indication" or "plain suggestion" that narcotics are being smuggled. Henderson v. United States, *supra*, footnote 1, makes it clear that when the cavity to be searched is a vagina, the search commences with the visual inspection

---

* Honorable E. Avery Crary, United States District Judge for the Central District of California, sitting by designation.

1. What comprises a reasonable border search when dealing with body cavities is a question that has received examination in several recent decisions of this court. Huguez v. United States, 406 F.2d 366 (9th Cir. 1968); Henderson v. United States, 390 F.2d 805 (9th Cir. 1967); Rivas v. United States, 368 F.2d 703 (9th Cir. 1966), cert. den. 386 U.S. 945, 87 S.Ct. 980, 17 L.Ed.2d 875 (1967); Blefare v. United States, 362 F.2d 870 (9th Cir. 1966).

and the "clear indication" must exist at that time.

"Surely, to require such a performance [exposure for inspection] is a serious invasion of personal privacy and dignity, and so unlawful if 'unwarranted'. Surely, in such a case, to be warranted, the official's action should be backed by at least the 'clear indication', the 'plain suggestion', required in [Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)] and in [Rivas v. United States, 368 F.2d 703 (9th Cir. 1966)]" 390 F.2d 808.

■ In this case, then, the doctor's probing of the vagina cannot be justified on the basis of what was disclosed by the vaginal inspection unless, prior to the inspection, there was a clear indication that appellant was in the possession of narcotics. Such an indication was lacking here.[2]

The physical examination of appellant had revealed no indication that she was a narcotics user or was then under the influence of narcotics. Customs agents had no information relating appellant herself to narcotics or narcotics dealers. The sole information on the basis of which the border agents acted was the fact, disclosed by an informer, that the car in which appellant rode across the border as a passenger had been observed earlier in the day parked in the driveway of the home of the lieutenant of a known dealer in narcotics. The informer testified he had never before seen the car in that driveway. No one was observed operating the car or entering or leaving either the car or the house.

From these facts one might suspect that the car's presence in the driveway related to narcotics and not to legitimate social or commercial intercourse. One might suspect that anyone later found riding in the car was the unseen person engaged in the suspected activity. The facts, however, give rise to no clear indication as to any transaction or any person.

Judgment reversed.

2. In *Henderson* we said: "On the other hand, the record does not show how many women who crossed the border during the same time were subjected to similar searches as a result of which nothing was found." In this case we do have such information. Dr. Salerno testified that he had examined the body cavities of some 300 persons during the year before the trial, and had found narcotics in 15 to 20 per cent of them. As we said in *Henderson*, the other 80 to 85 per cent "are certainly entitled to their dignity and privacy; their interests, too, are to be weighed." We still do not know how many more were subjected to visual inspection of their body cavities but not thereafter taken to the doctor for probing.