**William Kenneth THOMPSON, etc., Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 22643.

United States Court of Appeals
Ninth Circuit.

May 20, 1969.

Roger B. Dworkin (argued), San Diego, Calif., for appellant.

Phillip Johnson (argued), Asst. U. S. Atty., Edwin L. Miller, U. S. Atty., San Diego, Cal., for appellee.

Before BARNES and ELY, Circuit Judges, and THOMPSON,* District Judge.

PER CURIAM:

We affirm the judgment of conviction in this border crossing case, where a medically conducted search of the appellant's rectum disclosed a package of heroin.

As in Arciniaga v. United States, 409 F.2d 513 (9th Circuit, decided April 3, 1969), the facts and the trial court's findings in this case more closely resemble Rivas v. United States, 368 F.2d 703 (9th Cir. 1966), cert. den. 386 U.S. 945, 87 S.Ct. 980, 17 L.Ed.2d 875 (1967), than they do other "alimentary canal cases" involving narcotics. Evidence was sufficient to establish a "clear indication" of the possession of narcotics by appellant.

The other errors alleged as to introduction of evidence and sentencing we find without merit.

ELY, Circuit Judge (dissenting):

I respectfully dissent. When this case was submitted, there was then pending our disposition of Huguez v. United States, 406 F.2d 366 (9th Cir. 1968), another case involving the probing exploration of the rectal cavity of one suspected of crossing the international frontier with narcotics concealed in that cavity. The published record reveals that all of the judges of our court gave long and careful consideration to the *Huguez* problem. The original panel of our court, with one judge dissenting, held that the search of Huguez was illegal. We held that the federal constitution was infringed because the procedure employed by the border officials, with the assistance of the same doctor who participated in this case, was shockingly offensive under the teaching of Rochin v. State of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed.2d 183 (1952). More important, however, as it affects the present case, is our holding in *Huguez* that the border police were not aware, at the inception of the search procedure, of facts sufficient to provide the required "clear indication" that narcotics were concealed in Huguez' rectal cavity. I have previously expressed my dissatisfaction with the so-called "clear indica-

* Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation.

tion" test and its nebulous concept, but our court has accepted it. Rivas v. United States, 368 F.2d 703 (9th Cir. 1966), *cert. denied*, 386 U.S. 945, 87 S.Ct. 980, 17 L.Ed.2d 875 (1967); Henderson v. United States, 390 F.2d 805 (9th Cir. 1967). Each of the three judges first concerned with the *Huguez* appeal expressed his separate views. Following the issuance of these opinions, the case reached the attention of all except the Senior judges of our court. A vote was taken as to whether *Huguez* should be reheard in banc. The court rejected such a rehearing, with four of our ten judges publicly recording the view that we should have granted such a rehearing. 406 F.2d at 366.

Now, at long last, we decide the case before us. As I see it, there is no present need to review facts and possibly provoke another controversy such as those which have hitherto arisen in connection with the troublesome issue which is involved. *See* Huguez v. United States, *supra;* Blefare v. United States, 362 F.2d 870 (9th Cir. 1966). I do no more than express my conviction that if the required "clear indication" did not exist in *Huguez,* then, *a fortiori,* it did not exist in the circumstances of the case before us.

The disposition of the present appeal dramatically emphasizes the validity of my criticism of the "clear indication" test, expressed in *Huguez.* There, I wrote:

"Here the majority reaches a conclution favorable to Huguez, but it is altogether possible that had another judge sat in the place of [one of the two judges constituting the majority] the opinion of [the dissenter] would have prevailed.

"None should deny that there should be uniformity in the application of legal principles. Huguez should not have the benefit of a decision which might possibly be denied to others in the same position." 406 F.2d at 383.

A bygone jurist, whose name I do not know, once wrote something to the effect that no nation can endure and prosper into and through whose life is not found the golden thread of equal justice. Huguez has, perhaps, been set free, while the appellant here gains no redress for the degrading violation of any vestige of dignity which might have remained to him.

Once more, I must make it clear that while not even a judge is able to cast away that compassion which the illness of narcotics addiction invites, I share the disgust which all respectable individuals must hold for the self-degradation of one like Thompson, regardless that his depraved lack of respect for his own body may have been induced by his compulsive addiction. It must never be, however, that the application of legal principles should rest upon the qualities, favorable or unfavorable, of individuals who invoke them. I have previously expressed the opinion that, when time permits, authority for a bodily cavity search at our borders should be conferred by a judicial magistrate. *See* Blefare v. United States, 362 F.2d 870, 880–888 (9th Cir. 1966) (Ely, J., dissenting). My opinion is now shared by a number of commentators. *See* Comment, Intrusive Border Searches—Is Judicial Control Desirable?, 115 U. Pa. L. Rev. 276 (1966); Note, Search and Seizure at the Border—The Border Search, 21 Rutgers L. Rev. 513 (1967); 18 W. Res. L. Rev. 1007 (1967). *See also* Note, Border Searches and the Fourth Amendment, 77 Yale L.J. 1007 (1968). My dismay that such an extreme power is vested in border police, without judicial authorization and supervision, stems from my concern for the rights of innocent individuals whose legitimate business or pleasure leads them to cross our borders in countless numbers. In *Blefare,* I wrote:

"The record reveals that at the border point here involved, 'millions' of people

enter the United States each year. * * * 362 F.2d at 881.

"That customs officials should seek judicial authorization, where time permits, before engaging in extremely unusual invasions of the human body would appear to be a wholly reasonable requirement, a requirement which would protect the constitutional rights of individuals who cross our international borders and not significantly thwart the necessary regulation of border traffic." 362 F.2d at 888.

The record in *Blefare* was barren of information as to the number of innocent transients who had been subjected to degrading searches of their body cavities by mistaken police. Now, we have the disturbing, even appalling, information that "80 to 85 per cent", *at least four-fifths,* of all border transients whose bodily cavities are invaded by the border police are innocent of the suspected wrongdoing![1] Morales v. United States, 406 F.2d 1298, 1300n.2 (9th Cir. 1969). I suppose we should presume that those who violated the personal dignity of those innocent people believed that there were "clear indications" that their searches would be fruitful![2] I suspect, also, that the innocent individuals whose rectums have been probed, as well as the touring females whose vaginas have been explored, have, in most instances, chosen to suffer their shame in silence. I cannot remain silent, however, until our court or some other responsible agency undertakes to furnish more effective judicial safeguards against the infliction of these indignities.

I would reverse.

1. These statistics reflect the experience of a physician, who according to the records of our court, frequently assists the border police in their searches of bodily cavities. I think it not unreasonable to believe that in situations wherein the police may not seek medical assistance, an even greater percentage of innocent persons are offended.

2. The appellant crossed the border with two companions. The rectums of all three were probed, and if these searches were justified, the justification rested upon the same "clear indication." Yet the searches of the cavities of appellant's two companions were unproductive!