UNITED STATES of America,
Plaintiff and Appellee,

v.

Franklin Nial CASTLE, Defendant and
Appellant.

No. 23587.

United States Court of Appeals
Ninth Circuit.

April 11, 1969.

Rehearing Denied May 29, 1969.

W. Edward Morgan (argued), Tucson, Ariz., for appellant.

Jo Ann D. Diamos (argued), Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Tucson, Ariz., for appellee.

Before MADDEN,* Judge of the United States Court of Claims, and HAMLEY and DUNIWAY, Circuit Judges.

PER CURIAM:

The appellant, hereinafter called the defendant, was indicted, tried and convicted in the United States District Court for the District of Arizona, of having violated Section 174 of Title 21, United States Code, by fraudulently and knowingly importing and bringing into the United States from Mexico three grams of heroin.

Before his trial, the defendant filed a Motion to suppress the heroin which, if not suppressed, was to be used by the prosecution at the trial as evidence to prove that the defendant had, in fact, imported heroin. The motion to suppress was based upon the claim that the heroin had been obtained by the Government by an illegal search of the person of the defendant. The motion to suppress was denied, the heroin was, over the defendant's objection, admitted at his trial and as we have said, he was convicted. His trial was by the court, both he and the Government having waived the right to jury trial.

In the instant appeal the defendant asserts that the District Court committed error in denying his motion to suppress, and in admitting the heroin in evidence at his trial.

* Senior Judge, The United States Court of Claims, sitting by designation.

The circumstances of the seizure of the evidence were the following. On September 27, 1967, at about 5 o'clock, P.M., Federal Customs Agent Swindler at Nogales, Arizona, a customs station on the Mexico-Arizona border received information from the State of Arizona narcotics agents in Phoenix, Arizona, that the defendant and one Charles Vidalez were coming to Nogales to purchase narcotics. At about 7:00 P.M., U. S. Customs Agent Marshall was told by Arizona Agent Cozad that the defendant was going to Nogales, Mexico to purchase heroin. Marshall was, therefore, on the lookout for the defendant. Cozad told Marshall that Cozad's informant had given reliable information in the past which had resulted in seven or eight convictions. At about 7:45 P.M., Marshall saw the defendant and Vidalez and Wayne Balemon, and Mrs. Vidalez and three small children in an automobile in Nogales, Arizona near the port of entry from Mexico. Mr. and Mrs. Vidalez and the children got out of the auto at a bus terminal and the auto proceeded out of sight. The defendant and Balemon came back on foot some ten minutes later and rejoined Mr. and Mrs. Vidalez and the children. Mrs. Vidalez and the children walked into Mexico and the three men walked into the Customs Building to register. They then entered Mexico at about 8:10 P.M. on foot.

At about 10:45 P.M., the defendant returned from Mexico in the pedestrian lane, to enter the United States. Marshall and another agent, Cameron, conducted a strip search of the defendant.

▮ We pause here only to cite some authorities affirming the legality of a "border search" without a warrant by customs agents. In Boyd v. United States, 116 U.S. 616, 623, 6 S.Ct. 524, 528, 29 L.Ed. 746 (1886), the court discussed the history of border searches and said that "they are not embraced within the prohibition of the (Fourth) Amendment". In Murgia v. United States, 285 F.2d 14, 17, (CA 9, 1960), this court quoted Landau v. United States Att'y, 82 F.2d 285, 286 (CA 2, 1936), affirming the legality of warrantless border searches. Many cases in this court, since Murgia have approved such searches. We do not cite them.

For the strip search, the defendant removed his clothing. Cameron took a paper towel and wiped the area of the defendant's rectum. The towel disclosed an oily substance which resembled vaseline. The rectal area was unusually clean. Agent Marshall, who had formerly served in the Phoenix Police Department's Narcotics Detail knew the defendant as a heroin addict, and had been told by persons currently working in the Phoenix Narcotics Detail that the defendant was still a trafficker in narcotics. The customs agents took the defendant to the emergency room of a hospital where a qualified physician, using an accepted technique, first made a finger probe and then a proctoscope, and discovered a rubber contraceptive in the defendant's rectal sigmoid area some four inches from the rectal opening. The contraceptive was removed and it contained the heroin which was admitted in evidence at the defendant's trial.

▮ This court does not treat a border search of a body cavity as it treats a search of one's purse, luggage, clothes and automobile. In the latter cases, no probable cause is required to justify the search. In the body cavity situation, a "clear indication", that contraband is concealed in the body cavity, is necessary. Rivas v. United States, 368 F.2d 703, (CA 9, 1966); Henderson v. United States, 390 F.2d 805, (CA 9, 1967); Morales v. United States, (CA 9, 1969).

▮ In the instant case, the reliable information which the customs agents had, plus what they learned from the strip search of the defendant, constituted the necessary "clear indication" required by this court's decisions.

The judgment is affirmed.