**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Susan Jayne SHIELDS, Defendant-
Appellant.**

**No. 71-2288.**

United States Court of Appeals,
Ninth Circuit.

Jan. 12, 1972.

**1236**

Charles M. Sevilla (argued), J. Frank McCabe, Federal Defenders, Inc., San Diego, Cal., for defendant-appellant.

John R. Neece (argued), Asst. U. S. Atty., Harry D. Steward, U. S. Atty., Stephen G. Nelson, Asst. U. S. Atty. and Acting Chief, Crim. Div., San Diego, Cal., for plaintiff-appellee.

Before BROWNING and WRIGHT, Circuit Judges, and CRARY,* District Judge.

PER CURIAM:

The only point appellant raises on this appeal from her conviction under 21 U. S.C. § 174 is that the border search in which the heroin was removed from her vagina violated the Fourth Amendment.

■ Appellant's nervousness (reflected in an uncomfortable, rigid posture, high-pitched and strained voice, avoidance of the inspector's eyes, and exaggerated emphasis upon the plaster of Paris souvenirs purchased across the border); the needle marks upon her arms, including one or two that were "seeping," and hence only one to four hours old; similar marks upon her companion's arms; and the shortness of their visit (one to one-and-a-half hours) were "objective, articulable facts that would reasonably lead an experienced, prudent customs official to suspect" that she was concealing contraband on her body. United States v. Guadalupe-Garza, 421 F.2d 876, 879 (9th Cir. 1970). Accordingly, a strip or skin search of appellant was justified by "a real suspicion, directed specifically to [appellant]," that she was carrying contraband. Henderson v. United States, 390 F.2d 805, 808 (9th Cir. 1967).

■■ The search of a body cavity, however, must satisfy a more stringent test: Prior to such a search there must be a "clear indication" or "plain suggestion" of the presence of contraband concealed in the cavity. Rivas v. United States, 368 F.2d 703, 710 (9th Cir. 1966). Under Huguez v. United States, 406 F.2d 366 (9th Cir. 1969), the facts recited above were not sufficient to raise the required clear indication. If, but only if, it was proper to consider the additional fact that a condom was seen protruding when appellant complied with the inspectress' request to turn around and bend over, was the standard for a body cavity search satisfied.

■ The question, therefore, is whether the protruding condom was observed during the course of the authorized skin search, or only *after* the search of the body cavity had commenced.

Many of our cases indicate that inspection of the surface of the body in the anal area is permissible in a skin search. United States v. Summerfield, 421 F.2d 684 (9th Cir. 1970); United States v. Brown, 421 F.2d 181 (9th Cir. 1969); United States v. Castle, 409 F.2d 1347 (9th Cir. 1969); and Rivas v. United States, *supra*, 368 F.2d 703.

On the other hand, we said in Morales v. United States, 406 F.2d 1298 (9th Cir. 1969), that "Henderson v. United States [390 F.2d 805 (9th Cir. 1967)] makes it clear that when the cavity to be searched is a vagina, the search commences with the visual inspection and

---

* Honorable E. Avery Crary, United States District Judge for the Central District of California, sitting by designation.

the 'clear indication' must exist at that time." 406 F.2d at 1299–1300.

The government argues that this language should not be read as meaning that a vaginal search begins whenever a woman is asked to bend over, but only when she is also required to spread the cheeks of her buttocks or the lips of her vagina to allow a visual inspection of the vaginal cavity itelf. The government points out that these were the facts in *Henderson,* upon which *Morales* relied. The *Morales* court described the conduct in *Henderson* as "exposure for inspection." 406 F.2d at 1300. In describing the search involved in *Morales,* the court stated, somewhat ambiguously, "She was made to bend over and expose her vaginal area." *Id.* at 1299.

In any event, reading the testimony in this case most favorably to the government, it appears that the surface of the vaginal area was not inspected at all. The inspectress testified: "I had asked her to turn around and bend over, and as she did so, I noticed something that was protruding from her vaginal area." The question was asked, "What actually did you observe in the vaginal area?" The inspectress answered, "I could observe what was part of a condom that was partly protruding"; and again, "I could see something protruding from the body cavity."

There is nothing to indicate that appellant was asked to do anything more than turn away and bend over. There is no evidence that this action alone was sufficient to expose the external vaginal area. Nor is there evidence that appellant was touched, or that she was asked to spread her buttocks or spread the lips of her vagina. Interpreting the testimony most favorably to the government, the inspection was confined to the surface of appellant's body—excluding the vaginal area—until after the protruding condom was observed.

Affirmed.