UNITED STATES of America, Plaintiff-Appellee,

v.

Alfred Richard SOSA, Defendant-Appellant.

No. 72–2133.

United States Court of Appeals, Ninth Circuit.

Nov. 10, 1972.

James M. McCabe (argued), Federal Defenders Inc., San Diego, Cal., for defendant-appellant.

Robert P. Risso, Asst. U. S. Atty. (argued), Stephen G. Nelson, Asst. U. S. Atty., Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before HAMLEY and WRIGHT, Circuit Judges, and POWELL, District Judge.*

* Honorable Charles L. Powell, United States District Judge, Eastern District of Washington, sitting by designation.

EUGENE A. WRIGHT, Circuit Judge:

In a trial to the court without a jury, appellant Sosa was convicted of illegal importation of heroin in violation of 21 U.S.C. §§ 952, 960 and 963. Prior to trial, Sosa moved to suppress evidence obtained in a body cavity search. Following an evidentiary hearing, the motion was denied. Sosa then waived a jury trial and submitted the case on the transcript of the suppression motion.

As he crossed the border on foot, appellant appeared to customs officers to be under the influence of narcotics.[1] A skin search was conducted and it revealed a greasy substance on Sosa's buttocks.

A physician was then summoned. He observed the needle marks on Sosa's arms, the lethargic attitude, and the constriction of the eyes. He concluded that appellant was under the influence of drugs and that a body cavity search should be made. His rectal probe revealed "at least one packet." When Sosa was advised to cooperate, he expelled three packets of heroin.

■ To justify a skin search, sometimes called a strip search, a real suspicion, directed specifically to the person being searched, is required. Such "real suspicion" has been defined as:

". . . subjective suspicion supported by objective, articulable facts that would reasonably lead an experienced, prudent customs official to suspect that a particular person seeking to cross our border is concealing something on his body for the purpose of transporting it into the United States contrary to law." United States v. Guadalupe-Garza, 421 F.2d 876, 879 (9th Cir. 1970).

■ Clearly, there was such real suspicion here, considering all the factors listed in the footnote.

■■ A body cavity search, however, requires more. There must be a "clear indication or plain suggestion" that contraband may be located in a body cavity.

---

[1]. The following are the trial court's Findings of Fact:

1. That on or about March 14, 1972, at approximately 2:30 a. m. the defendant, Alfred Richard Sosa, arrived at the pedestrian line at the International Border at San Ysidro, California, from Mexico.

2. That defendant Sosa appeared to be in a stupor.

3. That defendant Sosa's head was nodding when he spoke to Inspector Erdman.

4. That defendant Sosa's pupils were constricted.

5. That defendant Sosa appeared to be under the influence of something other than alcohol as there was no smell of alcohol on his breath.

6. That defendant Sosa's heart was beating rapidly.

7. That defendant's Sosa's carotid artery was pulsating strongly.

8. That defendant Sosa was perspiring and his hands were clammy and wet.

9. That defendant Sosa advised Customs Inspector Erdman that he had gone to Mexico to kick his heroin habit.

10. That defendant Sosa had numerous needle marks and track marks on both arms, in the elbow area, and on the biceps on each arm.

11. That based on the above, a personal search was conducted.

12. That defendant Sosa was reluctant to spread his buttocks when requested to do so.

13. That Inspectors Erdman and Luck and Special Agent Cecil observed a greasy substance on defendant's buttocks.

14. That Agent Cecil observed Sosa's tongue to be coated with a white substance.

15. That Doctor Salganick observed track marks on Sosa's arm.

16. That Doctor Salganick formed the opinion that defendant Sosa was lethargic and under the influence.

17. That Doctor Salganick found that defendant Sosa's pupils to be of pinpoint quality and the pupils minimally reacted to light.

18. That it was Doctor Salganick's opinion that defendant Sosa was under the influence of narcotics.

19. That Doctor Salganick was under orders to examine the defendant's body cavity.

20. That a rectal probe performed by Doctor Salganick revealed the presence of "a packet, at least one packet."

21. That the defendant then expelled three packets.

Henderson v. United States, 390 F.2d 805 (9th Cir. 1967). Rivas v. United States, 368 F.2d 703 (9th Cir. 1966), cert. denied 386 U.S. 945, 87 S.Ct. 980, 17 L.Ed.2d 875 (1967). Appellant's contention that a warrant is required for a body cavity search has been considered and rejected by this circuit. *See, e. g.,* United States v. Castle, 409 F.2d 1347 (1969), cert. denied 396 U.S. 975, 90 S.Ct. 443, 24 L.Ed.2d 443 (1969), rehearing denied 396 U.S. 1063, 90 S.Ct. 760, 24 L.Ed.2d 757 (1970).

 We have said that nervousness, pinpointed eyes, fresh needle marks on the arms, possession of three rolled cotton balls of a kind frequently employed by narcotic users, plus the sight of a foreign material in the suspect's rectum constituted "clear indication or plain suggestion." [2] Here, there were no cotton balls, but appellant admitted that he was an addict; no foreign material was observed, but a greasy substance was. We see no distinction between this case and *Summerfield.*

Appellant also contends that a visual search of the anal region cannot be conducted without cause sufficient to justify a body cavity search. However, we have held that inspection of the surface of the body in the anal area is permissible in a skin search. *See, e. g.,* United States v. Shields, 453 F.2d 1235 (9th Cir.), cert. denied 406 U.S. 910, 92 S.Ct. 1615, 31 L.Ed.2d 821 (1972).

Sosa's reliance on Huguez v. United States, 406 F.2d 366 (9th Cir. 1968) is misplaced. There, we held improper a brutal and painful rectal probe because the information obtained from an earlier strip search was not passed on to the officers who conducted the body cavity search. Here, all facts were passed along.

Appellant's claim of a Fifth Amendment violation is without merit. He argues that his statement in the customs office, given without prior warning, should have been suppressed. Our rule in border cases is that:

" . . . [T]he warning requirement in *Miranda* need not be given to one who is entering the United States unless and until the questioning agents have probable cause to believe that the person questioned has committed an offense, or the person questioned has been arrested, whether with or without probable cause. It is at this point, in border cases, that the investigation has 'focused' in the *Miranda* sense." Chavez-Martinez v. United States, 407 F.2d 535, 539 (9th Cir. 1969), cert. denied 396 U.S. 858, 90 S.Ct. 124, 24 L.Ed.2d 109 (1969).

The inspector's questions of Sosa at the customs counter were routine inquiries of one returning to the United States and are clearly permissible under the *Chavez-Martinez* rule.

Appellant's other contentions have been considered and are without merit.

Affirmed.

---

2. United States v. Summerfield, 421 F.2d 684 (9th Cir. 1970).