**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sheila Lynn WILSON and Louis Ray
Jones, Defendants-Appellants.**

**No. 72-2930.**

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1973.

Lawrence S. Katz, Harvey S. Swickle, Miami Beach, Fla., for defendants-appellants.

Robert W. Rust, U. S. Atty., Jerome B. Ullman, Jr., Kerry J. Nahoom, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

Appellants were indicted on four counts. The first three related to 325 grams of cocaine—Count I charged conspiracy to distribute, Count II possession and Count III importation. Count IV charged importation of 4½ grams of marijuana. Appellants were charged with aiding and abetting in all counts. Following a lengthy hearing the District Court granted a motion to suppress as to certain statements made by appellant Jones prior to his having been given *Miranda* warnings and denied the motion as to marijuana found in Jones' suitcase, cocaine found taped to Miss Wilson's thighs, and marijuana found in Miss Wilson's boot. After the rulings on the motion to suppress Miss Wilson entered a plea of nolo contendere as to Counts III and IV, with the express understanding between her and the trial court that she would have the right to review by appeal the denial of the motion.[1]

The case then went to trial without a jury, on Counts I and II as to Miss Wilson and on all counts as to Jones. Judgments of conviction were entered against both defendants on only Counts III and IV.

There was evidence which the District Judge was entitled to credit showing the following facts and circumstances. Jones, a young man, and Miss Wilson, a young woman of 18, approached the customs area for incoming international passengers at Miami International Airport. They were serious and somber in manner. Jones had a plaster cast on one leg. (The presence of a cast can trigger suspicion, since it may be used as a hiding place for contraband.) Miss Wilson was wearing a long dress. (Though not a rare item of attire, it nevertheless can trigger suspicion because of the possibility, here an actuality, of concealing contraband attached to the lower legs or thighs.) The appellants presented themselves for routine customs inspection, Jones in front, Miss Wilson behind him. They were standing together and opened their luggage at the same time, so the inspector assumed they were married or traveling together and before examining any of their luggage inquired whether they were traveling together. Jones responded that he and Miss Wilson were traveling together and had been since Freeport [in the Bahamas. They had arrived on a flight from that point], where he had met Miss Wilson at the airport.

An inspector then examined Jones' suitcase and in it found a seed which, by examination on the scene, he concluded was a marijuana seed. He asked Jones if he knew what it was, and Jones responded that it was a marijuana seed, that there shouldn't have been any seeds in the suitcase because he had cleaned out the bag before boarding the plane. The inspector then searched further and found a spent .38 caliber cartridge, but with the bullet still in it. He inquired

---

1. This court has since noted its disapproval of this practice. United States v. Sepe, 486 F.2d 1044 [1973, en banc].

of Jones where the pistol was for the cartridge, and Jones responded that he had no pistol, that the cartridge was a souvenir. The inspector handed it to Jones, who according to his own testimony, voluntarily opened it (by removing the projectile from the cartridge case) to demonstrate that it was not live ammunition, and when he did so a white flaky powder whose general appearance was similar to cocaine, fell from the cartridge case to the floor, from where it could not be retrieved. Also the inspector saw attached to the bullet, so that it extended down into the cartridge case, a miniature spoon, which he described as "the type of apparatus . . . used by narcotics users to put a small amount of cocaine in the spoon and heat up that spoon and inhale the fumes of the burning cocaine." The inspector then informed Jones he must submit to a secondary examination, closed Jones' bag and told Jones to accompany him.

The District Court suppressed statements made by Jones after the moment he was told he must submit to secondary examination and prior to the time he was given *Miranda* warnings in the secondary interrogation room. Jones contends that the necessity of *Miranda* warnings was triggered at an earlier point in time—when the seed was examined and found to be marijuana, suspicion having then focused upon him—and that untimeliness in giving the warnings required exclusion from evidence of the cocaine and marijuana subsequently found on Miss Wilson.

■ Assuming that the inspector should not have asked Jones whether he knew what the seed was without first warning him of his rights, the further search of the suitcase was not shown to be related at all to the question and to Jones' answer. The inspector already had examined the seed and had concluded that it was contraband, and he described in his testimony the unique physical characteristics which caused him to identify the seed as marijuana. Additionally, although the inspector did not see the cartridge until he looked again in the suitcase, his discovery that it was narcotics-related, something he had no reason to suspect, came from Jones' voluntary action of taking the cartridge apart for the purpose of demonstrating that it was not live ammunition. Assuming the "establishment of the primary illegality [the question to Jones concerning whether he knew what the seed was], the evidence to which instant objection is made [the cocaine and marijuana found on Miss Wilson]" was not evidence that "ha[d] been come at by exploitation of that illegality." Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962).

While Jones' luggage was being examined, Miss Wilson's suitcase and a smaller bag were also inspected, her suitcase was closed and moved by conveyor to the end of the inspection line and the small bag was returned to her. After Jones was told he would be given a secondary examination and had tossed an airline ticket to Miss Wilson, she walked through the line to pick up her suitcase, and an agent then told her to accompany him. She was taken to an examination room where in a search agents discovered the cocaine and a small quantity of marijuana in her boot.

■■ The contention that there was not sufficient suspicion to submit Miss Wilson to a border search is meritless. It already was known that she and Jones were traveling together, she wearing a long dress and he with a cast on his leg, and the marijuana seed had been found in Jones' suitcase and identified. And, as we already have pointed out, the search for and discovery of cocaine on her body and marijuana in her boot did not come from exploitation of the single question and answer to Jones, but even if there had been exploitation she would have no standing to object to a search of her person on grounds that were personal to Jones. Alderman v. United States,

394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

 The contention that the evidence was insufficient to convict Jones as an aider and abettor with regard to the cocaine and marijuana found on Miss Wilson is meritless.

Affirmed.