UNITED STATES of America,
Plaintiff-Appellee,

v.

Carol ASBURY and John Bruce,
Defendants-Appellants.

Nos. 1189, 1225, Dockets 78–1149,
78–1152.

United States Court of Appeals,
Second Circuit.

Submitted Aug. 14, 1978.

Decided Nov. 13, 1978.

974

Benjamin Sneed, New York City, filed brief for appellant Asbury.

Nathan H. Mitchell, New York City, filed brief for appellant Bruce.

Carol C. White, Buffalo, N.Y., Asst. U.S. Atty. (Richard J. Arcara, U.S. Atty., W.D. N.Y., Buffalo, N.Y., of counsel), filed brief for appellee.

Before VAN GRAAFEILAND, Circuit Judge, MARKEY, Chief Judge, U.S. Court of Customs and Patent Appeals,* and DOOLING, District Judge.**

VAN GRAAFEILAND, Circuit Judge:

On September 3, 1977, appellants, upon reentering the United States at the Niagara Falls International Airport following a flight from Hong Kong, were found by United States Customs officials to be in

* Hon. Howard T. Markey, Chief Judge, U.S. Court of Customs and Patent Appeals, Washington, D.C., sitting by designation.  .

** Hon. John F. Dooling, Senior District Judge of the United States District Court for the Eastern District of New York, sitting by designation.

possession of counterfeit currency. Appellant Bruce had twenty-nine counterfeit twenty-dollar bills concealed in his underwear. Asbury had eight counterfeit twenty-dollar bills concealed in her brassiere. Appellants were arrested and charged with possession of counterfeit federal reserve notes in violation of 18 U.S.C. § 472 and with importation of the notes in violation of 18 U.S.C. § 545. Following a jury trial in the United States District Court for the Western District of New York, Bruce was convicted on the first count and acquitted on the second. Asbury was convicted on both counts.

Prior to trial, both defendants moved to suppress all evidence relating to the counterfeit notes, on the ground that it was secured as the result of illegal "strip" searches. Our review of the law in this and other Circuits satisfies us that the district court did not err in denying these motions.[1]

■ From our nation's earliest days, the government has exercised the right to control the movement of people and goods across our national boundaries. *United States v. Glaziou*, 402 F.2d 8, 12 (2d Cir. 1968), *cert. denied*, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969); *Landau v. United States Attorney for Southern District of New York*, 82 F.2d 285, 286 (2d Cir.), *cert. denied*, 298 U.S. 665, 56 S.Ct. 747, 80 L.Ed. 1389 (1936). Moreover, the Supreme Court has established, in an unbroken line of cases, that routine border inspections to effectuate this control do not violate the Fourth Amendment's prohibition against unreasonable searches. *See, e. g., Boyd v. United States*, 116 U.S. 616, 623–24, 6 S.Ct. 524, 29 L.Ed. 746 (1886); *Carroll v. United States*, 267 U.S. 132, 151–52, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Ramsey*, 431 U.S. 606, 616–19, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). In expressing adher-

ence to this doctrine, the Court has used phrases as broad as "routine inspection and searches of individuals". *See Almeida-Sanchez v. United States*, 413 U.S. 266, 272, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). It appears, however, that the phrase "routine inspection", as used by the Court, contemplates only the search of luggage, *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 376, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), or other "belongings and effects." *California Bankers Ass'n v. Schultz*, 416 U.S. 21, 63, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); *Carroll v. United States, supra*, 267 U.S. at 153, 45 S.Ct. 280.[2] The Court has specifically refrained from deciding under what circumstances more personally offensive searches may be conducted. *United States v. Ramsey, supra*, 431 U.S. at 618 n. 1, 97 S.Ct. 1972.

■ The standard, as in every Fourth Amendment case, must be that of reasonableness. *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Routine searches of a person's belongings and effects are made reasonable by his decision to cross the border. *United States v. Ramsey, supra*, 431 U.S. at 619, 45 S.Ct. 280. To this extent, the person involved has no expectation of privacy that society is prepared to recognize as reasonable. *United States v. Head*, 546 F.2d 6, 8 (2d Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). However, although anyone entering or leaving the country may expect to have his luggage and personal effects examined, he does not expect that his entry or departure, standing alone, will cause him to be subjected to a strip search. Before a border official may insist upon such an extensive invasion of privacy, he should have a suspicion of illegal concealment that is based upon something more than the border crossing, and the suspicion

---

1. Most of the cases dealing with the legality of strip searches are from the circuits adjoining our nation's land borders, particularly the Fifth and the Ninth Circuits.

2. A number of circuits have indicated that the term "personal effects" includes a person's outer clothing, *United States v. Chase*, 503 F.2d

571, 574 (9th Cir. 1974), *cert. denied*, 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 727 (1975); *United States v. Stornini*, 443 F.2d 833, 835 (1st Cir.), *cert. denied*, 404 U.S. 861, 92 S.Ct. 162, 30 L.Ed.2d 104 (1971), and the contents of his or her purse, wallet, or pockets. *Henderson v. United States*, 390 F.2d 805, 808 (9th Cir. 1967).

should be substantial enough to make the search a reasonable exercise of authority.

■ The Ninth Circuit says that this must be a "real suspicion". *United States v. Guadalupe-Garza,* 421 F.2d 876, 879 (9th Cir. 1970); *Henderson v. United States, supra,* 390 F.2d at 808. The Fifth Circuit rejects the Ninth Circuit rule, adhering to what it calls a "reasonable suspicion" standard. *United States v. Smith,* 557 F.2d 1206, 1208 (5th Cir. 1977), *cert. denied,* 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978). Under that standard, the issue is simply whether the border official has a reasonable basis on which to conduct the search. *United States v. Chiarito,* 507 F.2d 1098, 1100 (5th Cir.), *cert. denied,* 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975). Like the Fifth Circuit, we prefer to avoid the use of the term "real suspicion". The use of that term suggests the alternative possibility of an "unreal suspicion," a state of mind that is difficult to conceptualize. Accordingly, even though the Ninth Circuit defines "real suspicion" in terms of reasonableness,[3] we think that the use of the word "real" adds an unnecessarily confusing factor to the Fourth Amendment standard, which is simply that of reasonableness.

■ We have said that border stops and searches must be reasonable, and that what is reasonable will depend on all the facts of a particular case. *United States v. Glaziou, supra,* 402 F.2d at 12. Although, in *Glaziou* the defendant was required only to pull up his shirt so that a concealed belt containing heroin could be removed, the rule we there announced is equally applicable to a complete strip search. In each case, reasonableness is determined by weighing the warranted suspicion of the border official against the offensiveness of the intrusion.[4]

■ Although the circuits may articulate different standards of reasonableness, they are substantially in accord concerning the factors which may be taken into account in determining the issue of reasonableness. Among these factors are the following:

(1) Excessive nervousness. *See United States v. Chiarito, supra,* 507 F.2d at 1100; *United States v. Mastberg,* 503 F.2d 465, 468 (9th Cir. 1974); *United States v. Diaz,* 503 F.2d 1025, 1026 n. 1 (3d Cir. 1974).

(2) Unusual conduct. *See United States v. Diaz, supra,* 503 F.2d at 1026 n. 1; *United States v. Shields,* 453 F.2d 1235, 1236 (9th Cir.), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1615, 31 L.Ed.2d 821 (1972).

(3) An informant's tip. *See United States v. Afanador,* 567 F.2d 1325 (5th Cir. 1978); *United States v. Castle,* 409 F.2d 1347 (9th Cir.), *cert. denied,* 396 U.S. 975, 90 S.Ct. 443, 24 L.Ed.2d 443 (1969).

(4) Computerized information showing pertinent criminal propensities. *See United States v. Kallevig,* 534 F.2d 411, 412, 414 (1st Cir. 1976).

(5) Loose-fitting or bulky clothing. *See United States v. Kallevig, supra,* 534 F.2d at 412, 414; *United States v. Chiarito, supra,* 507 F.2d at 1099; *United States v. Diaz, supra,* 503 F.2d at 1026 n. 1.

---

3. The Ninth Circuit defines "real suspicion" as "subjective suspicion supported by objective, articulable facts that would reasonably lead an experienced, prudent customs official to suspect that a particular person seeking to cross our border is concealing something on his body for the purpose of transporting it into the United States contrary to law." *United States v. Guadalupe-Garza,* 421 F.2d 876, 879 (9th Cir. 1970).

4. In order to avoid unnecessarily intrusive searches and the risk of having the fruits of such searches suppressed, customs agents ordinarily proceed from "the less intrusive to the more intrusive" form of search. *See United States v. Afanador, supra,* 567 F.2d at 1329 n. 4. That procedure was followed by the agents in this case. They began by conducting a "primary" search of the appellants' luggage, after which the appellants were referred to a "secondary" search station. The secondary search consisted of a pat-down, which revealed suspicious bulges in the appellants' clothing caused by the concealed counterfeit bills. Only after the agents discovered these bulges, which gave them further reason to suspect the appellants of carrying contraband, did they conduct a strip search of the appellants.

We are not confronted with the question whether, in the circumstances of this case, the agents would have been justified in conducting a body orifice search. *See id.* at 1329 nn. 3–4; *United States v. Williams, supra,* 459 F.2d at 45 n. 2.

(6) An itinerary suggestive of wrongdoing. *See United States v. Kallevig, supra,* 534 F.2d at 412, 414; *United States v. Chiarito, supra,* 507 F.2d at 1100; *United States v. Diaz, supra,* 503 F.2d at 1026 n. 1; *United States v. Shields, supra,* 453 F.2d at 1236.

(7) Discovery of incriminating matter during routine searches. *See United States v. Wilson,* 488 F.2d 400, 401–02 (5th Cir. 1973), *cert. denied,* 416 U.S. 989, 94 S.Ct. 2397, 46 L.Ed.2d 767 (1974); *United States v. Flores,* 477 F.2d 608, 609 (1st Cir.), *cert. denied,* 414 U.S. 841, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973); *United States v. Summerfield,* 421 F.2d 684, 685 (9th Cir. 1970).

(8) Lack of employment or a claim of self-employment. *See United States v. Smith,* 557 F.2d 1206, 1209 (5th Cir. 1977), *cert. denied,* 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978).

(9) Needle marks or other indications of drug addiction. *See United States v. Shields, supra,* 453 F.2d at 1236.

(10) Information derived from the search or conduct of a traveling companion. *See United States v. Wilson, supra,* 488 F.2d at 402; *United States v. Gil de Avila,* 468 F.2d 184, 186–87 (9th Cir. 1972), *cert. denied,* 410 U.S. 958, 93 S.Ct. 1428, 35 L.Ed.2d 692 (1973).

(11) Inadequate luggage. *See United States v. Smith, supra,* 557 F.2d at 1209; *United States v. Diaz, supra,* 503 F.2d at 1026 n. 1; *United States v. Holtz,* 479 F.2d 89, 91 (9th Cir. 1973).

(12) Evasive or contradictory answers. *See United States v. Himmelwright,* 551 F.2d 991, 996 (5th Cir.), *cert. denied,* 434 U.S. 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977).

■ In most of the cases upholding the legality of a strip search, the courts have relied upon a combination of the foregoing factors rather than upon any of them standing alone. *See, e. g., United States v. Diaz, supra,* 453 F.2d at 1026 n. 1. There was such a combination of factors in the instant case. Prior to appellants' arrival, border officials had received word from a source previously found to be reliable that a couple answering appellants' descriptions was suspected of carrying contraband. Upon arrival, appellant Bruce was one of the first to leave the plane but one of the last to present himself for customs inspection. He changed inspection lanes while awaiting inspection. He wore loose-fitting clothing. He had made a side trip to Thailand, a well-known narcotics source. He had shipped several suitcases back to the United States prior to his return. His demeanor, including eye contact and speech, was unusual. A pat-down search revealed a bulge at Bruce's midriff. The bulge was caused by two packets of money concealed in Bruce's underwear, one containing $3500 and the other $1500. Included in this money were the twenty-nine counterfeit twenty-dollar bills.[5]

Appellant Asbury had also visited Thailand. She stated that she was self-employed. Like Bruce, she was one of the first off the plane but one of the last to undergo inspection. Her traveling companion, Bruce, had been found to be carrying contraband. A pat-down search revealed an unusual bulge at Asbury's midriff. The strip search which followed disclosed that the bulge was caused by a packet containing $12,000 which was concealed in Asbury's girdle. In addition, $260 was found concealed in her brassiere, and $160 of this was counterfeit.

In view of the suspicious factors that were present, the district court did not err in holding that the customs agents had a sufficient basis to suspect that appellants were attempting to smuggle contraband into the United States and that therefore the strip searches were reasonable and lawful.

■ Appellants' contention that the evidence was insufficient to support the jury's verdict is without merit. Although the government was required to prove that appellants knew they were in possession of counterfeit bills, *United States v. Lacey,* 459 F.2d 86, 88 -89 (2d Cir.), *cert. denied,*

---

5. Also in the concealed package were two small plastic bags containing heroin.

409 U.S. 860, 93 S.Ct. 146, 34 L.Ed.2d 106 (1972), that knowledge did not have to be established by direct evidence but could be inferred from the surrounding facts and circumstances. *Id.* at 90; *see United States v. Sheiner*, 410 F.2d 337 (2d Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969). The jury was entitled to conclude that the concealed possession of thirty-seven counterfeit twenty-dollar bills by two people traveling together was not simply an innocent coincidence. The jury could also consider, as probative of knowledge, that Asbury's bills were carried separately in her brassiere and that Bruce had a total of 29 counterfeit bills in his possession. The jurors examined the bills and could conclude that their counterfeit nature must have been readily apparent to appellants. The proof, viewed in the light most favorable to the government, *United States v. Koss*, 506 F.2d 1103, 1106 (2d Cir. 1974), *cert. denied*, 420 U.S. 977, 95 S.Ct. 1402, 44 L.Ed.2d 657 (1975), was sufficient to support the jury's verdict.

■ Asbury's contention that reversible error was committed by the introduction of evidence that she had been convicted of prostitution in 1968 is also without merit. Although the district court had ruled, outside the presence of the jury, that proof of this conviction would be admissible on the question of credibility, the government did not refer to the conviction in either its cross-examination or recross-examination of Asbury. Asbury's counsel introduced evidence of the conviction on his second re-direct examination of his client. Counsel brought out that Asbury had been a professional call girl in order to show how she had accumulated $10,000 to go into business, and then proceeded to examine her about her conviction. Having volunteered this information after the government had avoided any reference to it, appellant cannot now urge error on the part of the trial court. *See United States v. Mariani*, 539 F.2d 915, 920–21 (2d Cir. 1976).

■ We find no abuse of discretion in the district court's remaining evidentiary rulings. Absent abuse of discretion, eviden-tiary rulings will rarely be disturbed on appeal. *United States v. Fisher*, 455 F.2d 1101, 1104 (2d Cir. 1972).

■ Appellant Asbury did not preserve her objection to the district court's charge that the jury could determine that counterfeit money was "merchandise" within the meaning of 18 U.S.C. § 545 if it was exchangeable for goods or services or genuine money, and the charge was clearly not plain error.

Appellants received a fair trial, and the jury's verdict was supported by the evidence. The judgments appealed from are affirmed.