101 F.3d 688
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Chukwumwa OKONKWO, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 95-2757.
 United States Court of Appeals, Second Circuit.
 June 28, 1996.
 
 APPEARING FOR APPELLANT: Chukwumwa Okonkwo, pro se, Seagoville, TX.
 APPEARING FOR APPELLEE: Christopher A. Buscaglia, Assistant United States Attorney for the Western District of New York, Buffalo, NY.
 W.D.N.Y.
 AFFIRMED.
 Before MINER, JACOBS and PARKER, Circuit Judges.
 UPON CONSIDERATION of this appeal from an order of the United States District Court for the Western District of New York, it is hereby
 ORDERED, ADJUDGED, AND DECREED that the order be and hereby is AFFIRMED.
 This cause came on to be heard on the transcript of record and was submitted.
 Plaintiff-appellee Chukwumwa Okonkwo appeals pro se from an order of the United States District Court for the Western District of New York (Arcara, J.), denying his motion to vacate his sentence pursuant to 28 U.S.C. § 2255.
 
 
 1
 Sometime prior to September 14, 1992, Okonkwo, a resident of Nigeria, obtained a falsified United States passport. Using the falsified passport, Okonkwo travelled by plane from Nigeria to France and then to Canada. On September 14, 1992, Okonkwo boarded a bus in Toronto that was destined for the United States. At the United States border at Buffalo, New York, Okonkwo and the other passengers were questioned by United States Custom agents. The agents noticed that Okonkwo's passport appeared to be falsified. Okonkwo then was removed from the bus and brought to a secondary inspection station. Thereafter, a Customs agent, after drilling holes in Okonkwo's suitcase, discovered over two pounds of heroin hidden in a secret compartment in the suitcase.
 
 
 2
 On October 9, 1992, Okonkwo was indicted on a multi-count indictment that charged him, inter alia, with possession with the intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and using an altered passport issued under the authority of the United States to gain entry into the United States, in violation of 18 U.S.C. § 1543.
 
 
 3
 Jury selection took place on December 15, 1992. Of 39 prospective jurors, defense counsel described two as black and one as black or Hispanic. Both the government and the defense agreed that the two black jurors should be dismissed. The remaining minority juror, Rene Rodriguez, described himself as divorced with four children under eighteen, a renter, and unemployed. He stated that he had been honorably discharged from the army, where he had served for 12 and one-half years, and that he also had worked as a laborer and as a maintenance worker. The government exercised a peremptory challenge to dismiss Rodriguez as a juror, and defense counsel raised a Batson objection. See Batson v. Kentucky, 476 U.S. 79 (1986). Without prompting by the court, the prosecutor suggested that the reasons for the challenge was that Rodriguez' "social condition" was too similar to Okonkwo's.
 
 
 4
 The district court subsequently rejected the Batson challenge. The district judge assumed that Okonkwo had made a prima facie showing of discrimination, but found that "because of the similar economic situation between the defendant ... there is a parallel, and for that reason I feel that is a neutral reason and that would be sufficient." The court then asked defense counsel if he wished to add to the record, and defense counsel answered, "No." The court then seated twelve jurors all of whom were white and employed.
 
 
 5
 On December 15, 1992, the jury returned a verdict finding Okonkwo guilty on all counts. After his conviction, new counsel was appointed for Okonkwo's appeal. Thereafter, the attorney filed a motion for leave to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967). This Court granted the Anders motion and the government's motion for summary affirmance.
 
 
 6
 On May 22, 1995, Okonkwo filed the § 2255 motion giving rise to this appeal. In his motion, Okonkwo claimed, inter alia, that: (1) he was illegally searched at the border when he attempted to enter the United States from Canada; (2) the prosecutor improperly exercised a peremptory challenge to remove a minority juror from the jury panel; and (3) the government failed to establish that he distributed heroin. The district court denied Okonkwo's motion, finding it to be procedurally barred and meritless. This appeal followed.
 
 
 7
 Okonkwo argues that the district court erred in finding that: (1) probable cause was unnecessary for the search at the border; (2) the Batson claim failed because the government presented a neutral reason for exercising its peremptory challenge; and (3) because he possessed nearly one kilogram of heroin, intent to distribute could be inferred. We think that Okonkwo's claims are meritless.
 
 
 8
 First, Okonkwo's claim that he was illegally searched at the border is without merit. Routine border searches, including searches of luggage, need not be supported by a warrant, probable cause, or reasonable suspicion. See United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985). Even assuming that reasonable suspicion was required to support the Customs agent's drilling of holes in Okonkwo's suitcase, we think that the discovery of Okonkwo's altered passport provided a basis for reasonable suspicion. See United States v. Asbury, 586 F.2d 973, 976-77 (2d Cir.1978).
 
 
 9
 We also think that Okonkwo's Batson challenge is without merit. The Supreme Court has set forth a three-step process for evaluating equal protection claims concerning peremptory challenges: (1) the defendant must "make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race"; (2) if the defendant makes the prima facie showing, the prosecutor must "articulate a race-neutral explanation for striking the juror[ ] in question"; and (3) "the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." Hernandez v. New York, 500 U.S. 352, 358-59 (1991) (citations omitted). Because the third step involves fact-finding, we review a trial court's finding on discriminatory intent for clear error. Id. at 364-66.
 
 
 10
 For the purposes of this appeal, we assume that Okonkwo presented a prima facie case of discrimination. The burden thus shifted to the government to present a race-neutral explanation for its peremptory challenge. In this case, the government's proffered explanation was that Rodriguez' "social condition" was too similar to Okonkwo's. Accordingly, the burden then fell on Okonkwo to demonstrate that the government's proffered explanation was pretextual. We note that an explanation of a peremptory challenge need not be "plausible" or "persuasive." Purkett v. Elem, 115 S.Ct. 1769, 1771 (1995). The court need only be concerned with the "facial validity" of the explanation. Id. Moreover, discriminatory intent is not inherent in an explanation based on a juror's social condition. See United States v. Brown, 34 F.3d 569, 572 (7th Cir.1994), cert. denied, 115 S.Ct. 1136 (1995).
 
 
 11
 Although the trial judge reached his conclusion on the Batson claim before affording defense counsel an opportunity to rebut the prosecution's race-neutral justifications, the trial judge then gave counsel a chance to add to the record. Defense counsel declined to argue pretext, and appeared to acquiesce in the district court's ruling. Accordingly, Okonkwo has failed to meet his burden of demonstrating that the government's reasons were pretextual, and the district court did not err in concluding that the prosecutor's reasons for excluding Rodriguez were race-neutral and sufficient.
 
 
 12
 Finally, Okonkwo's conviction on the possession with intent to distribute charge is supported by sufficient evidence. We review insufficiency of the evidence claims in the light most favorable to the government. United States v. Gaviria, 740 F.2d 174, 185 (2d Cir.1984). A conviction for possession with intent to distribute may be supported by evidence that the defendant carried a large quantity of drugs which most likely would exceed an amount desired for personal consumption. Id. Because Okonkwo possessed nearly one kilogram of heroin, the jury reasonably could have inferred intent to distribute. See United States v. Phibbs, 999 F.2d 1053, 1065-66 (6th Cir.1993), cert. denied, 114 S.Ct. 1070 (1994).