*211
 
 OPINION OF THE COURT
 

 Levine, J.
 

 Defendant was convicted of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]), criminal possession of a controlled substance in the fifth degree (Penal Law § 220.06 [5]), resisting arrest (Penal Law § 205.30) and false personation (Penal Law § 190.23). The drug possession counts related to 2.37 grams of crack cocaine which the police extracted from defendant’s rectum during a strip search incident to his arrest. The dispositive issue on this appeal is the validity of that seizure under the Fourth Amendment of the United States Constitution.
 

 Prior to trial, defendant moved to suppress the drugs seized from his person. At the suppression hearing, a detective in the Troy Police Department Special Operations Unit testified that he and several other officers entered an apartment after obtaining the tenant’s permission to do so. The tenant told the police that individuals in the apartment were “cutting up cocaine” for sale and that one of the subjects was wanted on an arrest warrant for assaulting a police officer. Upon entering the apartment, the detective saw defendant sitting on a couch with a woman on his lap. He also saw a “crack pipe and small piece of white rocklike substance” on a nearby table. Based upon his training and experience, the detective believed the substance was crack cocaine. The police arrested defendant and the woman, ordered them onto the floor, handcuffed them and
 
 *212
 
 conducted a “quick pat-down” search for weapons. No weapons were found.
 

 The police then separated defendant and the female in order to strip search them. Defendant initially cooperated by taking off most of his clothes, but at some point he protested and scuffled with the officers. During the search, which took place in a bedroom, the police removed a plastic bag, an outer portion of which they saw protruding from defendant’s rectum. The bag contained several individually wrapped pieces of a white rock-like substance, which later tested positive for cocaine. Drugs were also recovered from defendant’s female companion.
 

 In his motion to suppress the drugs seized from his person, defendant focused his challenge on the legality of his arrest and the strip search incident thereto. He claimed that the arrest was effected without probable cause, presumably as a pretext to justify the search of his person. In addition, he specifically averred that the body cavity search was “illegal and effected in the absence of probable cause, in the absence of a warrant and in the absence of any exigency.” County Court denied the motion to suppress in all respects. On appeal from the judgment of conviction, the Appellate Division affirmed (283 AD2d 715 [3d Dept 2001]). A Judge of this Court granted defendant leave to appeal, and we now reverse.
 

 The uncontested facts are that after defendant was stripped, the police seized evidence secreted in his rectum. The Supreme Court of the United States addressed the constitutionality of a seizure involving an intrusion into the human body in
 
 Schmerber v California
 
 (384 US 757 [1966]). Recognizing that it was “writing] on a clean slate,” the Court held that the police were justified in requiring a person arrested for driving while under the influence of alcohol to submit to a blood test to determine blood alcohol level
 
 (id.,
 
 at 768). The Court framed the relevant issues as “whether the police were justified in requiring petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness”
 
 (id.).
 

 After concluding that the police had probable cause to arrest the petitioner for driving while under the influence of alcohol, the Supreme Court determined that seizures involving intrusions beyond the body’s surface cannot be justified simply because they are made incident to a lawful arrest. The Court reasoned that although a “full search” of a person is allowed
 
 *213
 
 incident to a lawful arrest in order to disarm the suspect or preserve evidence (see,
 
 United States v Robinson,
 
 414 US 218, 234-235 [1973]), the considerations permitting such a search “have little applicability with respect to searches involving intrusions beyond the body’s surface”
 
 (Schmerber v California,
 
 384 US, at 769,
 
 supra).
 
 The Fourth Amendment “forbid[s] any such intrusions on the mere chance that desired evidence might be obtained”
 
 (id.,
 
 at 770). Rather, there must exist a “clear indication” that desired evidence will be found. In the absence of such an indication, the Fourth Amendment mandates that the police “suffer the risk that such evidence may disappear unless there is an immediate search”
 
 (id.).
 

 Moreover, even where there is a “clear indication” that incriminating evidence will be retrieved if the bodily intrusion is permitted, “[s]earch warrants are ordinarily required for searches of dwellings, and
 
 absent an emergency,
 
 no less could be required where intrusions into the human body are concerned”
 
 (id.
 
 [emphasis supplied]). Indeed, as the Court stressed, the “importance of informed, detached and deliberate determinations of the issue whether or not to invade another’s body in search of evidence of guilt is indisputable and great”
 
 (id.).
 
 The police were not required to obtain a search warrant in
 
 Schmerber
 
 only because of the existence of exigent circumstances — the officer there “might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened ‘the destruction of evidence’ ”
 
 (id.
 
 [quoting
 
 Preston v United States,
 
 376 US 364, 367 (1964)]).
 

 Finally, the
 
 Schmerber
 
 Court concluded that the procedure used to extract the blood from the petitioner was itself reasonable and conducted in a reasonable manner
 
 (id.,
 
 at 771-772). In upholding the seizure, the Court noted that its decision to allow the intrusion into the petitioner’s body “under stringently limited conditions” did not indicate that the Fourth Amendment “permits more substantial intrusions, or intrusions under other conditions”
 
 (id.,
 
 at 772).
 

 Undoubtedly, body cavity searches incident to an arrest are at least as intrusive as blood test procedures. This Court has referred to them as “invasive” and “degrading”
 
 (People v Luna,
 
 73 NY2d 173, 178 [1989]), and other courts have similarly described them
 
 (see, Mary Beth G. v City of Chicago,
 
 723 F2d 1263, 1272 [7th Cir 1983];
 
 see also, Arruda v Fair,
 
 710 F2d 886, 887 [1st Cir],
 
 cert denied
 
 464 US 999 [1983]).
 

 
 *214
 
 On the suppression record before us, we conclude that the body cavity search of defendant incident to his arrest was unreasonable and invalid. Even assuming that the extraction of the drugs satisfied all of Schmerbefs other requirements, the People failed to offer any evidence of exigent circumstances to justify dispensing with the warrant requirement — that a neutral, detached magistrate determine that the search is justified and will be conducted in a reasonable manner. This record is devoid of any evidence from which an officer “might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant” posed a threat to the officer’s personal safety or of the destruction of the evidence
 
 (Schmerber v California,
 
 384 US, at 770,
 
 supra).
 
 Notably, no police officer testified that, despite the available means of incapacitating defendant and keeping him under full surveillance, an immediate body cavity search was necessary to prevent his access to a weapon or prevent his disposing of the drugs. Nor was there any evidence the police were concerned that the drugs — which were wrapped in plastic — could have been absorbed into defendant’s body. The absence of exigent circumstances dictates the conclusion that the body cavity search here was unreasonable.
 
 *
 

 The People’s attempt to now invoke the inevitable discovery doctrine to validate the use of the evidence despite the invalidity of the seizure was not preserved and we do not consider it
 
 (see, People v Dodt,
 
 61 NY2d 408, 416 [1984]). The drugs extracted during this body cavity intrusion therefore must be suppressed. This determination renders unnecessary our consideration of defendant’s additional constitutional challenge to the strip search itself
 
 (see, e.g., Swain v Spinney,
 
 117 F3d 1, 6-8 [1st Cir 1997];
 
 Weber v Dell,
 
 804 F2d 796, 802 [2d Cir 1986],
 
 cert denied sub nom. County of Monroe v Weber,
 
 483 US 1020 [1987]).
 

 Defendant’s remaining contentions — challenging the validity of his arrest, the admissibility of statements to the police, and that he was deprived of the effective assistance of counsel — are without merit.
 

 Accordingly, the order of the Appellate Division should be reversed, defendant’s motion to suppress physical evidence
 
 *215
 
 granted and the case remitted to County Court for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order reversed, etc.
 

 *
 

 Because that search was made at the scene of and as an incident to defendant’s arrest, this case does not present the occasion for us to rule on the validity of body cavity searches conducted at the station house, detention centers or correctional facilities.