**06-5309-cv**
**Hartline v. Gallo**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

—

August Term, 2007

(Argued: April 2, 2008                    Decided: October 8, 2008)

Docket No. 06-5309-cv

—

STACEY HARTLINE,

*Plaintiff-Appellant,*

—v.—

ANTHONY GALLO, DARREN GAGNON, MARLA DONOVAN, JIM SHERRY, VILLAGE OF
SOUTHAMPTON POLICE DEPARTMENT, INCORPORATED VILLAGE OF SOUTHAMPTON,

*Defendants-Appellee*s.

—

Before:

LEVAL, CALABRESI, and WESLEY, *Circuit Judges.*

—

Appeal from a decision of the United States District Court for the Eastern District of New York (Hurley, *J.*) granting summary judgment to Defendants on Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985, and declining to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff alleges that she was subjected by the Southampton Police to an unconstitutional strip search in the absence of individualized suspicion that she was secreting contraband on her person, and that the strip search was telecast throughout the police station.

VACATED in part, AFFIRMED in part, and REMANDED for further proceedings consistent

-1-

with this opinion.

WILLIAM E. BETZ, Lifshutz & Lifshutz, P.C., New York, New York, for *Appellant*.

DIANE K. FARRELL, Devitt Spellman Barrett, LLP, Smithtown, New York, for *Appellees*.

WESLEY, *Circuit Judge*:

Stacey Hartline appeals from a decision of the United States District Court for the Eastern District of New York (Hurley, *J.*) granting summary judgment to Defendants on her claims under 42 U.S.C. §§ 1983 and 1985, and declining to exercise supplemental jurisdiction over her state law claims. On appeal, Hartline argues that the district court erred in granting judgment to the Defendants with regard to her § 1983 claims against the Village of Southampton and various individual officers of the Southampton Police Department. She contends that her Fourth Amendment rights were violated when she was subjected by the Southampton Police to a strip search in the absence of individualized suspicion that she was secreting contraband on her person, and when that search was telecast throughout the police station. She further contends that because the strip search violated clearly established law, the individual officers are not entitled to qualified immunity, and that because the search was conducted pursuant to municipal policy, the Village of Southampton may be held liable for the search. We agree. Accordingly, we vacate the district court's judgment with regard to those claims, and remand the case to the district court for further proceedings in accordance with this opinion.

## BACKGROUND

**I**

Hartline, a twenty-one-year-old woman, was driving her pick-up truck on the morning of January 6, 2003 in the Village of Southampton, New York.[1] She was running errands for her employer, Best Modular Homes, including a stop at her employer's bank to pick up funds. She was wearing a coat, t-shirt, jeans, long johns, socks, boots, and underwear. At approximately 9:30 a.m., she was stopped by Officer Anthony Gallo of the Southampton Village Police because her truck was missing a rear license plate. Because the driver's side window on the pick-up truck was broken, Hartline needed to open her door to speak to Gallo. Through the open door, Gallo saw a stem of a marijuana plant on the floor of Hartline's truck. He picked it up and told Hartline that if she showed him all the marijuana in the truck she would not be arrested. Hartline answered that there might be some other unusable bits of marijuana in the truck. Gallo then handcuffed Hartline behind the truck and searched it. Gallo found some unusable bits of marijuana, including a butt of a marijuana cigarette, a container with a few seeds, and a pipe. Gallo never asked Hartline if she was carrying any marijuana (or other contraband) on her person.

Gallo took Hartline to the police station. At the police station, Hartline was greeted by Sergeant Darren Gagnon, who told her she would have to wait until a female officer arrived to strip search her. Marla Donovan, a female officer, was then summoned. Donovan took Hartline's handcuffs off and strip searched her in the cell designated for females. Donovan required Hartline first to remove all of her lower garments and bend over while Donovan made a

---

[1] Because the district court granted summary judgment in favor of the Defendants, we must consider the evidence in the light most favorable to the Plaintiff, drawing all reasonable inferences in her favor. *See, e.g.*, *Scott v. Harris*, 127 S. Ct. 1769, 1774-75 (2007).

visual inspection of her orifices, and then to remove her upper garments and lift her bra. Hartline was "crying hysterically" during this process.

According to Hartline's evidence, her strip search was conducted pursuant to the Southampton Police Department's policy of strip searching all arrested females, regardless of whether there was individualized suspicion sufficient to justify the search. This evidence included an official report of the incident submitted by Officer Donovan in which she described the strip search of Hartline as done "in the same manner that the undersigned conduct[s] searches of all defendants that are female," and an affidavit of Hartline's stepfather Stephen Wilson, who was a detective in a neighboring town attesting that when Wilson spoke soon after the incident to Southampton's Chief of Police, Jim Sherry, Sherry acknowledged that all female prisoners are strip searched. In response to Wilson's astonishment, Sherry added, "Steve, you are a cop, you should know . . . . [Y]ou know the guys do it."[2]

After the strip search, Hartline was booked, photographed, and fingerprinted. At that time, her handbag was searched, revealing $1300 in cash, which she had withdrawn from the bank that morning for her employer. She was then returned to the female cell, where she remained for some time. She then noticed a video camera trained on the area in the cell in which she had been strip searched. The camera appeared to her to be turned on. She was eventually released, and given an appearance ticket for misdemeanor possession of marijuana. As she

[2] Although the evidence viewed in the light most favorable to Plaintiff might well support a claim that the policy of strip searching all female arrestees in circumstances where an identically situated male would not have been strip searched violates her rights under the Equal Protection Clause, *see Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1274 (7th Cir. 1983), she has not asserted that theory either in the district court or on appeal. As a result, we do not address it. On rehearing, Plaintiff may wish to seek leave of the district court to amend her pleading to assert such a claim.

-4-

passed Gallo on her way out, she saw a television monitor near him, showing a cell. She asked him whether the cell shown on the monitor was the one she had been in. He answered that it was.

Ultimately, the misdemeanor marijuana charges against Hartline were dismissed.

**II**

Hartline brought this action against Officers Gallo, Gagnon, Donovan, and Chief Sherry, as well as the Southampton Police Department and Incorporated Village of Southampton, seeking compensatory damages, punitive damages, and attorneys' fees. The original complaint pressed 42 U.S.C. §§ 1983 and 1985 claims, as well as three state law-based claims, against each of the Defendants. The district court granted the Defendants' motion for summary judgment on the federal claims and declined to exercise supplemental jurisdiction over the state claims. *Hartline v. Gallo*, No. 03-civ-1974, 2006 U.S. Dist. LEXIS 75849, at \*31 (E.D.N.Y. Sept. 30, 2006). On appeal, we consider only Hartline's § 1983 claims against the individual officers and the Village of Southampton.[3]

---

[3] In the district court, Plaintiff alleged that the Defendants "willfully conspired together to deprive [her] of her civil rights" in violation of 42 U.S.C. § 1985. The district court dismissed this claim against all Defendants on the grounds that "Plaintiff[] fail[ed] to allege a conspiracy involving two or more legal entities," because "[u]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Hartline*, 2006 U.S. Dist. LEXIS 75849, at \*29-30. We affirm the district court's holding on the basis of the reasoning contained in its opinion. *See id.* at \*29-31; *see also Herrman v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) (explaining conspiracy doctrine); *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 359 (E.D.N.Y. 1999) (applying doctrine to police department and officers therein).

The district court dismissed all of Plaintiff's claims against the Southampton Police Department on the grounds that, "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot . . . be sued." *Hartline v. Gallo*, 2006 U.S. Dist. LEXIS 75849, at \*25 (quoting *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y.

Hartline's § 1983 claims are premised on her allegation that she was subjected to an unconstitutional strip search "pursuant to an official policy" of the Southampton Police Department. Hartline posits two different violations of her Fourth Amendment rights: (1) that she was strip searched in the absence of individualized suspicion that she was secreting contraband on her person; and (2) that the strip search was telecast to the male officers of the Southampton Police Department for their amusement. She argues that because the strip search violated clearly established law, the officers responsible for the search are not entitled to qualified immunity, and that because the search was conducted pursuant to a municipal policy of searching all female detainees, the Village of Southampton is also liable.

With respect to Hartline's §1983 claims against the individual officers, the court found that although Hartline adduced sufficient evidence to create a genuine issue of material fact as to whether she was strip searched pursuant to a departmental policy to strip search all female detainees, her Fourth Amendment rights were not violated because the circumstances of her arrest – objectively viewed – provided the individualized reasonable suspicion necessary to justify the search. *Hartline*, 2006 U.S. Dist. LEXIS 75849, at *14-20. Moreover, the court reasoned, even assuming *arguendo* that the officers lacked individualized reasonable suspicion, they would be entitled to qualified immunity because of the absence of any clear Second Circuit or Supreme Court precedent establishing that the search was unconstitutional. *Id.* at *23; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). As for Hartline's claim that her Fourth Amendment rights were violated when the strip search was telecast throughout the police station,

2002)). The Plaintiff does not contest this holding of the district court on appeal, and therefore it is waived. *See, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

the court ruled that Hartline had waived that claim by failure to argue it in her papers in opposition to the summary judgment motion. *Hartline*, 2006 U.S. Dist. LEXIS 75849, at *7 n.1.

Lastly, concerning Hartline's claim against the Village of Southampton, the court noted that under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690-91 (1978), a municipality cannot be held liable for the conduct of its officers unless the plaintiff shows both a violation of her constitutional rights and that the violation was pursuant to a municipal policy or custom. Although troubled by evidence of an unconstitutional policy to strip search females routinely, the court found that because the strip search of Hartline was supported by individualized reasonable suspicion, Hartline lacked standing to challenge departmental policy. *Hartline*, 2006 U.S. Dist. LEXIS 75849, at *26-28.

## DISCUSSION

The district court erred in granting summary judgment to Defendants on Hartline's § 1983 claims against the individual officers and the Village of Southampton. Hartline's evidence, viewed in the light most favorable to her, demonstrates a violation of her Fourth Amendment right to be free from "unreasonable searches." U.S. Const. amend. IV. She was subjected to a strip search by the Southampton Police, pursuant to departmental policy, in the absence of individualized suspicion that she was secreting contraband on her person. Moreover, the district court erred in holding that Hartline waived the alternative basis for her § 1983 claim – namely, that the officers violated her Fourth Amendment rights by telecasting her strip search through the police station; she did not.

**I**

**A**

The Fourth Amendment requires an individualized "reasonable suspicion that [a misdeameanor] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest" before she may be lawfully subjected to a strip search. *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986); *see also N.G. v. Connecticut*, 382 F.3d 225, 232 (2d Cir. 2004) (noting that all circuits to consider issue have reached similar conclusion). "A reasonable suspicion of wrongdoing is something stronger than a mere hunch, but something weaker than probable cause." *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997) (internal quotation marks and citations omitted). "To establish reasonable suspicion, [officers] must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience. The standard requires individualized suspicion, specifically directed to the person who is targeted for the strip search." *Id.* (internal quotation marks and citations omitted).

Whether a particular strip search is constitutional "turns on an objective assessment of the . . . facts and circumstances confronting [the searching officer] at the time, and not on the officer's actual state of mind at the time" of the search. *Maryland v. Macon*, 472 U.S. 463, 470-71 (1985) (internal quotation marks and citations omitted); *see also Simms v. Village of Albion, N.Y.*, 115 F.3d 1098, 1108 (2d Cir. 1997). In other words, the fact that the officer who actually conducted the search did "not have the state of mind which is [hypothesized] by the reasons which provide the legal justification for the [search] does not invalidate the [search] as long as the circumstances, viewed objectively, justify that [search]." *Scott v. United States*, 436 U.S. 128, 138 (1978). Thus, even if there were a departmental policy of strip searching all arrestees without making any assessment of particularized circumstances, the relevant question is still: Do

-8-

the circumstances of Hartline's arrest support a reasonable suspicion that she was secreting contraband on her person?

We believe they do not. Indeed, it is hard to imagine how the facts of this case could have led a reasonable officer in Officer Gallo's position to suspect that Hartline was illicitly concealing drugs on her person. Officer Gallo had no reason to believe that Hartline was under the influence of narcotics at the time of her arrest. Officer Gallo found no useable narcotics in Hartline's vehicle, nor did he see Hartline take any suspicious actions which might have suggested she was hiding something as he approached her vehicle. Officer Gallo did not notice anything about Hartline's physical appearance that suggested she was secreting drugs on her person, nor did he engage in a less invasive pat down search that suggested the presence of contraband. Hartline answered every question that Officer Gallo asked her about drugs truthfully, yet Gallo did not even *ask* Hartline if she had any drugs on her person. Furthermore, Harline had been arrested for nothing more serious than a B-misdemeanor.[4] *See Foote v. Spiegel*, 118 F.3d 1416, 1425 (10th Cir. 1997) ("[A] strip search of a person arrested for driving while under the influence of drugs . . . is not justified in the absence of reasonable suspicion that the arrestee has drugs . . . hidden on . . . her person. . . . [T]his court expressly rejected the proposition that it is reasonable to strip search every inmate booked on a drug related charge. . . ."); *Way v. County of Ventura*, 445 F.3d 1157, 1162 (9th Cir. 2006) (arrest for misdemeanor drug offense does not support reasonable suspicion necessary to justify strip search).

---

[4] In fact, though Hartline was initially charged with a misdemeanor, according to Hartline's evidence, an infraction would have been the more appropriate charge under New York law. *See* NY Penal Law §§ 221.05, 221.10. All of the charges against Hartline were eventually dismissed.

Indeed, these facts are far removed from the facts of the only Second Circuit case that Defendants argue justifies their search, *United States v. Asbury*, 586 F.2d 973 (2d Cir. 1978). Defendants point not to our holding in *Asbury* – which involves a border search, rather than a search incident to arrest – but rather to the case's list of "factors which may be taken into account in determining the issue of [the] reasonableness" of a search, including: (1) excessive nervousness; (2) unusual conduct; (3) an informant's tip; (4) computerized information showing pertinent criminal propensities; (5) loose-fitting or bulky clothing; (6) an itinerary suggestive of wrongdoing; (7) discovery of incriminating matter during routine searches; (8) lack of employment or a claim of self-employment; (9) needle marks or other indications of drug addiction; (10) information derived from the search or conduct of a traveling companion; (11) inadequate luggage; and (12) evasive or contradictory answers. *Id.* at 976-77. However, of these factors, only the fifth and seventh apply in this case, and, in context, neither gave strong support for an inference that Hartline was secreting drugs on her person, much less in her person. That is, Hartline's arguably "bulky" clothing was perfectly appropriate given the cold January weather, she voluntarily handed her jacket to an officer at the station before she was strip searched, and she readily admitted to the presence of all "incriminating matter" pre-discovery by Officer Gallo. As a result, *Asbury* can hardly be said to provide meaningful support for Defendants' contention that Hartline's strip search was justified by reasonable suspicion.

Ultimately, if the facts of this case amount to reasonable suspicion, then strip searches will become commonplace. Given the uniquely intrusive nature of strip searches, as well as the multitude of less invasive investigative techniques available to officers confronted by misdemeanor offenders, that result would be unacceptable in any society that takes privacy and

bodily integrity seriously.[5]  Thus, we must conclude that Hartline's Fourth Amendment rights were violated, because she was subjected to a strip search by the Southampton Police in the absence of reasonable suspicion that she was secreting contraband on her person.

**B**

Defendants argue that even if Hartline's Fourth Amendment rights were violated, the individual officers are still entitled to summary judgment on the issue of qualified immunity. "Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).  A police officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was "objectively reasonable" for the officer to believe his conduct did not violate a clearly established constitutional right. *Id.*  Thus, a defendant is entitled to summary judgment

> if [he] "adduce[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ]" to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

*Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) (quoting *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C. Cir. 1986) (Scalia, *J.,* sitting by designation)).

___

[5] We note that this case presents a markedly different set of circumstances than those addressed by the standard of the "special needs" of penal or other institutions to conduct strip searches by reason of the presence of a larger, or dangerous, or vulnerable population, where introduction of secreted contraband from the outside raises a substantial risk of harm. *See N.G. v. Connecticut*, 382 F.3d 225, 234-37 (2d Cir. 2004); *Covino v. Patrissi*, 967 F.2d 73, 76-80 (2d Cir. 1992).  No such special needs exist where, as here, an arrestee is taken to an empty cell for purposes of an evidentiary search, subsequent booking, and release.

Defendants do not dispute that for more than twenty years this Court has held that a misdemeanor arrestee may not be strip searched in the absence of individualized reasonable suspicion that she is secreting contraband. *See, e.g.*, *Wachtler v. County of Herkimer,* 35 F.3d 77, 81 (2d Cir. 1994); *Walsh v. Franco,* 849 F.2d 66, 68-69 (2d Cir. 1988); *Weber v. Dell,* 804 F.2d 796, 802 (2d Cir. 1986). Instead, Defendants argue that we should find, as we did in *Wachtler*, that though "the Fourth Amendment proscription of strip-searches of misdemeanor arrestees without reasonable suspicion is clearly enough established to preclude the defense of qualified immunity . . ., we cannot say on the somewhat unique facts before us that it is clearly established that no 'reasonable suspicion' justified a strip-search in this case." *Wachtler*, 35 F.3d at 81 (internal citation omitted).

We reject the analogy Defendants attempt to draw between the circumstances facing the officers in *Wachtler* and those facing the officers in this case. In *Wachtler*, any number of the factors that we identified as relevant to the reasonableness of a search in *Asbury* were present, including: unusual conduct by the arrestee; the discovery of incriminating matter during a routine search of the arrestee; and the arrestee's evasive and contradictory responses to questioning. *See Asbury*, 586 F.2d at 976-77. In particular, Wachtler, who was arrested for speeding, refused to provide his name or driver's license to the arresting officers or to the judge at his arraignment, and was found to be carrying $1000 on his person but claimed indigency and refused to post bail in the amount of $250. *See Wachtler*, 35 F.3d at 79. Moreover, Wachtler was strip searched as a precursor to being confined in Herkimer County Jail, while Hartline appears to have been confined solely for the purpose of being strip searched. *Id.; see also N.G.*, 382 F.3d at 230-32 (explaining that "special needs" of government related to lawful confinement may be relevant to

-12-

Fourth Amendment reasonableness analysis in context of strip searches). Indeed, in *Wachtler* we declined to reach the ultimate issue of whether Wachtler's Fourth Amendment rights were violated by the defendants' strip search. On the contrary, in this case, we conclude without hesitation that Hartline's rights were violated.

It is true that this Court has never decided a case with facts just like those now before us. However, we have also never decided a case suggesting that a strip search on these facts would be constitutionally permissible. Thus, we are comfortable concluding that in the absence of indicia that this Court has found to support individualized reasonable suspicion in the past, a reasonable jury might determine that Defendants were acting in a fashion that clearly violated Hartline's Fourth Amendment rights. *See Robison*, 821 F.2d at 921. Defendants are therefore not entitled to summary judgment on the issue of qualified immunity. Accordingly, we vacate the district court's grant of summary judgment to the individual defendants with regard to Hartline's § 1983 claim predicated on the officers' lack of reasonable suspicion for their strip search.

**C**

To prevail against a municipality on a § 1983 claim, a plaintiff must demonstrate both an injury to a constitutionally protected right and that the injury "was caused by a policy or custom of the municipality or by a municipal official 'responsible for establishing final policy.'" *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 108-09 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008); *see also Monell*, 436 U.S. at 694. Thus, to prevail against the Village of Southampton, Hartline must demonstrate that she was subjected to an unconstitutional strip search by the Southampton Police pursuant to departmental policy.

-13-

Although the district court recognized that Hartline had adduced some evidence "suggesting that Southampton exercised a policy of strip searching females in violation of their constitutional rights," it granted summary judgment to the municipal defendant on the grounds that Hartline had not demonstrated that the strip search she was subjected to was unconstitutional. *Hartline*, 2006 U.S. Dist. LEXIS 75849, at \*26. Because we have already held that the strip search violated Hartline's Fourth Amendment rights, and because even Defendants do not (and cannot) seriously contest the fact that Hartline has amassed sufficient evidence that her strip search was conducted pursuant to municipal policy to survive summary judgment, we vacate the district court's grant of summary judgment to the Village of Southampton on this § 1983 claim.

**II**

The district court also granted summary judgment to Defendants on Hartline's alternative ground for her § 1983 claim – namely, that the officers violated her Fourth Amendment rights by telecasting her strip search through the police station – on the theory that she had "effectively waived" it by failing to discuss it in her memo in opposition to Defendants' motion for summary judgment. We think that Hartline had adequately disputed this issue in her papers. She expressly contested this issue in her counterstatement of material facts responding to Defendant's motion, and in her reply affidavit under the express heading, "Broadcast of Search." Indeed, Defendants conceded at oral argument that the court erred in finding waiver. Moreover, Defendants also acknowledged in their brief that Hartline's allegation of telecasting "goes to the heart of the reasonableness inquiry of the search vis-a-vis the scope of the intrusion and the manner and place in which the search was conducted." *See generally Bell v. Wolfish*, 441 U.S. 520 (1979).

Accordingly, we vacate the portion of the judgment that dismissed Hartline's claim predicated on the telecast of the search.[6]

**CONCLUSION**

The district court's grant of summary judgment to the individual defendants and the Village of Southampton on Hartline's § 1983 claims is vacated. The district court's dismissal without prejudice of Hartline's state law claims is vacated. The remaining parts of the district court's opinion are affirmed.[7] This case is remanded to the district court for proceedings in accordance with this opinion.

---

[6] While Defendants maintain the surveillance system did not telecast images from the female cell elsewhere in the station, Hartline's evidence on this point is sufficient to raise a genuine issue of material fact and thus to survive summary judgment. The district court did not find otherwise.

[7] *See supra* note 3.