POOLER, Circuit Judge,
dissenting:
I concur in the majority opinion in its statements of controlling law and its conclusions as to Part I, II,[1] and IV. I respectfully dissent however, as to Part III, because I believe that the relevant rule regarding body cavity searches was clearly established, as it was clearly foreshadowed as a federal constitutional right, prior to Gonzalez’s arrest.
I.
To determine whether a right was clearly established[2] we look to “(1) whether the right in question was defined with ‘reason-áble specificity’; (2) whether the decisional law of the Supreme Court and the applica *164 ble circuit court support the existence- of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.” Shechter v. Comptroller of City of N.Y., 79 F.3d 265, 271 (2d Cir.1996) (internal quotation marks omitted). “If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to ‘know’ that the law forbade conduct not previously identified as unlawful.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
This is not to say that an action is clearly established only if the court has explicitly held that the behavior is unlawful. Anderson v. Creighton, 483 U-S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). We have repeatedly held a law is considered clearly established if decisions of the Supreme Court or this Court “clearly foreshadow a particular ruling on the issue.” Varrone v. Bilotti 123 F.3d 75, 79 (2d Cir.1997) (internal quotation marks omitted) (emphasis added). See also id. at 79 (quoting) Shabazz v. Coughlin, 852 F.2d 697, 701 (2d Cir.1988) (stating in “the absence of a specific authority directly on point” we look to whether this Circuit or the Supreme "Court had presaged the particular ruling). We have taken special care to apply this “clearly foreshadowed” standard in the context of the Fourth Amendment, see Varrone, 123 F.3d at 78; see also Shabazz, 852 F.2d at 701, which “is not capable of precise definition or mechanical application.” Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
II.
Here, the relevant question is whether the heightened standard for an anal body cavity search of a felony arrestee was clearly foreshadowed by this Circuit or the Supreme Court, at the time of Gonzalez’s search in 2006.[3] The New York State Appellate Division initially found that the officer’s had not met the heightened reasonable suspicion standard to justify Gonzalez’s visual cavity search, indicating that the Appellate Division believed the rule was clearly established. People v. Gonzalez, 57 A.D.3d 1220, 1222, 870 N.Y.S.2d 529 (N.Y.App.Div.2008). The district court concluded differently, stating that the law requiring a more stringent standard for body cavity searches had not been clearly established until People v. Hall, 10 N.Y.3d 303, 310-11, 856 N.Y.S.2d 540, 886 N.E.2d 162 (2008) subsequent to Gonzalez’s arrest. Gonzalez v. City of Schenectady, No. 09-cv-1434, 2011 WL 6010910, at *4 (N.D.N.Y. Nov. 30, 2011). The majority agrees with the district court, to the extent that it states, “[t]he law governing these types of searches is far from settled; the rules alter with circumstances, and the circumstances are myriad.” However, the majority fails to apply the correct test. Regardless of whether the Supreme Court or this Circuit directly held this rule, it was undoubtedly foreshadowed previous to Gonzalez’s arrest, thus, I must disagree with the majority’s conclusion in Part III.
Both the Supreme Court and this Circuit have held that police searches within the body require a special heightened standard. In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed'2d 908 (1966), the Supreme Court held that intrusions beyond the body’s surface are forbidden by the Fourth Amendment in the ab *165 sence of clear indication that the evidence will be found. Id. at 770, 86 S.Ct. 1826. In that case, the Court held that probable cause to search a drunk driver did not justify the more intrusive drawing of the suspect’s blood. Id. “[Ijnterests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be’obtained.” Id', at 769-70, 86 S.Ct. 1826. See also Skinner v. Ry. Labor Execs. Ass’n, 489 U.S. 602, 613-14, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (“The [Fourth] Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction.”) Thus, “[i]n the absence of a clear indication[4] that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.” Schmerber, 384 U.S. at 770, 86 S.Ct. 1826.
In Bell, 441 U.S. 520, 99 S.Ct. 1861, the Supreme Court extended this rule to body cavity searches. There, the Court held that policies requiring pretrial detainees be given visual body cavity searches after having seen a visitor may be constitutional. Id. at 560, 99 S.Ct. 1861. However, Bell still recognized pretrial detainees retain some Fourth Amendment rights. Id. at 558, 99 S.Ct. 1861; see also id. at 545, 99 S.Ct. 1861 (“we have held that convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison”). Vigilant of these privacy interests and Schmerber, the Court concluded these “searches must [still] be conducted in a reasonable manner.” Id. at 560, 99 S.Ct; 1861 (citing Schmerber, 384 U.S. at 771-72, 86 S.Ct. 1826). The test for reasonableness requires courts to consider “the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.” Id. at 559, 99 S.Ct. 1861.[5]
Following Bell, this Circuit and others were wary to uphold body cavity searches as constitutional, under the test for reasonableness. The Circuits hesitated, stating that such searches are invasive and degrading. See Hartline v. Gallo, 546 F.3d 95, 102 (2d Cir.2008); Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1272 (7th Cir.1983) (recognizing “strip searches involving the visual inspection of the anal and genital areas as ‘demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission’ ”); see also Arruda v. Fair, 710 F.2d 886, 887 (1st Cir.1983). In fact, the Supreme Court agreed with this depiction, stating that body cavity searches were the “most intrusive” of all searches. Vemonia Sch. Dist. MJ v. Acton, 515 U.S. 646, 672, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). As stated in a related Fourth Amendment case, the general consensus was that, “[s]uch an invasion of bodily integrity implicates an individual’s most personal and deep-rooted expectations of privacy.” Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013) (internal quotation marks omitted).
Thus, for over two decades, this Circuit understood that cavity searches for misde- *166 meanants would be unjustified unless they satisfied the heightened standard. Weber v. Dell, 804 F.2d 796, 802 (2d Cir.1986). In Weber, we stated that the Supreme Court had not “read out of the Constitution the provision of general application that a search be justified as reasonable under the circumstances.” Id. at 800. Nor had it “free[d] prison officials from all Fourth Amendment constraints.” Id. Thus, we held that a strip search of a misdemeanor arrestee is unlawful unless there is “reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.” Id. at 802.[6]
Following Weber, for years this Circuit has repeatedly affirmed the rule that body cavity searches, particularly for misde-meanants, must be justified by an individualized reasonable suspicion. See Hartline, 546 F.3d at 100-01 (quoting Weber, 804 F.2d at 802) (citing persuasive authority for the proposition that “it is [not] reasonable to strip search every inmate booked on a drug related charge” and reasoning that otherwise “strip searches will become commonplace”); see also Kelsey v. Cnty. of Schoharie, 567 F.3d 54, 62 (2d Cir.2009) (reiterating the Circuit’s “long-standing precedent covering strip searches for those arrested for misdemeanors” and collecting cases) (citations omitted); N.G. v. Connecticut, 382 F.3d 225, 232 (2d Cir.2004) (noting that “all the circuits to have considered this issue have reached the same eonelusion”); Shain v. Ellison, 273 F.3d 56, 64-65 (2d Cir.2001); Wachtler v. Cnty. of Her-kimer, 35 F.3d 77, 82 (2d Cir.1994); Walsh v. Franco, 849 F.2d 66, 68-69 (2d Cir. 1988). For example, in Shain, we held “it was clearly established in 1995 that persons charged with a misdemeanor and remanded to a local correctional facility ... have a right to be free of a strip search absent reasonable suspicion, that they are carrying . contraband .or weapons.” 273 F.3d at 66. We concluded the county’s “visual body cavity search” of a misde-meanant absent, reasonable suspicion violated the Fourth Amendment. Id.
Despite these consistent rulings rejecting the constitutionality of body cavity searches, appellees and the majority persist in arguing that the rule was not clearly foreshadowed, because in this case Gonzalez was arrested for a felony, and the Second Circuit cases deal exclusively with misdemeanors. Appellees argument fails, however, because this Court and the Supreme Court had both clearly foreshadowed that the heightened standard applied regardless of a person’s status.
In Shain, we recognized, “we long had stressed the intrusive nature of body cavity searches.” Id. at 63. In addition to this guiding principle, we stated that whether our heightened standard applied to felony arrestees was at least an open issue, id. at 64,[7] and intimated that if this Circuit was asked that question, we would likely resolve it in Gonzalez’s favor given that status should not affect a person’s rights, id. at 66 n. 3.[8] Although not explie- *167 itly held, this suggestion was echoed by the Supreme Court’s in Tennessee v. Garner, 471 U.S. 1, 14, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), which undermined the distinction between a felon and a misde-meanant as “untenable.” Thus, this Court and the Supreme Court both . suggested that all body cavity searches must be conducted according to a heightened standard regardless of a, person’s arrestee status. As Appellees admit in their brief, “the distinction between the types of searches was evolving” in this direction. Appellees’ Br. at 16.
Guided by these cases, the Southern District of New York came to this exact conclusion. It held that, the language of the Supreme Court and this Circuit foreshadowed that the stringent standard for body cavity searches applies to felony arrestees as well as misdemeanants. See Sarnicola v. Cnty. of Westchester, 229 F.Supp.2d 259 (S.D.N.Y.2002); Murcia v. Cnty. of Orange, 226 F.Supp.2d 489 (S.D.N.Y.2002); Dodge v. Cnty. of Orange, 209 F.R.D. 65 (S.D.N.Y.2002).[9] In Murcia, the district court, like the majority here, acknowledged that “the Second Circuit has not spoken directly to the appropriate test for the validity of a strip search.”
However, unlike the majority, it correctly asked if this rule was clearly foreshadowed despite “the absence of specific authority directly on point.” Vqrrone, 123 F.3d at 79. Applying that analysis, the district court observed that this “Circuit has held blanket policies subjecting all newly-arrested misdemeanor detainees in a local correctional facility to visual body cavity searches are unconstitutional.” Murcia, 226 F.Supp.2d at 493. The Murcia court'also stated that the Supreme Court wrote in Gamer that, “[i]n the context of Fourth Amendment searches and seizures ... the distinction■ between felonies and misdemeanors is minor and often arbitrary,” Id. at 494 (internal quotation marks omitted).[9] It concluded,'
Coupling '[the Supreme Court’s] words with the Second' Circuit’s strong statements about constitutional protections for strip searches of accused misde-meanants, [allows for the conclusion] that the law in this Circuit does not countenance a policy mandating strip searches' of all felony arrestees simply because they stand accused of felonies.
Id. at 494. Having correctly determined we “clearly foreshadowed” the rule, the court then held, “[t]he ‘individualized reasonable suspicion’ rule should apply to accused felons as well as misdemeanants upon arrival at a local correctional facility.” Id.
In Samicola, the lower court once again came to the same conclusion. It stated that although this “Circuit ha[d] not spoken directly to the appropriate test for the *168 validity of a strip search incident to a felony arrest, [the district court in Murcia] recently opined that the Court of Appeals would apply the particularized reasonable suspicion test to searches of felony arrestees as well” because “[i]n the sixteen years following Weber, the Second Circuit has firmly held that strip searches of persons lawfully arrested for minor infractions (misdemeanors and violations) must be justified by an individualized reasonable suspicion of concealed weapons or contraband.” Samicola, 229 F.Supp.2d at 269-70. The lower court also observed that the Supreme Court had previously stated that “the assumption that a ‘felon’ is more dangerous than a misdemeanant [is] untenable.” Id. at 270 n. 4 (citing Gamer, 471 U.S. at 14, 105 S.Ct. 1694). Thus, finding the rule had already been forecast, it stated that “no constitutional prerogative [exists in creating a distinction for felony arrests in order to] strip search individuals in the absence of particularized reasonable suspicion that they are carrying drugs or contraband.” Id. at 270.
In these cases, the district court drew from the principles and inferences made by our Circuit and the Supreme Court for nearly two decades to deduce the foreshadowed conclusion that the individualized reasonable suspicion rule should apply to searches so intrusive regardless of a person’s status.
The district court was not alone in its deduction. In People v. More, 97 N.Y.2d 209, 214, 738 N.Y.S.2d 667, 764 N,E.2d 967 (2002), and then People v. Hall, 10 N.Y.3d 303, 310-11, 856 N.Y.S.2d 540, 886 N.E.2d 162 (2008), the New York Court of Appeals also found that an anal cavity search of a felony arrestee had to meet a heightened standard. In More, officers arrested a defendant in his home in close proximity to what appeared to be drugs. More, 97 N.Y.2d at 212, 738 N.Y.S.2d 667, 764 N.E.2d 967. The initial “pat-down” yielded no evidence of drugs, but, regardless, police conducted an anal cavity search. Id. The New York Court of Appeals held the body cavity search of defendant incident to his arrest was unreasonable and invalid, and drugs seized from his rectum must be suppressed because the Fourth Amendment requires a “clear indication” that contraband will be found, in order to make the more intrusive search, “beyond the body’s surface.” Id. at 212-13, 738 N.Y.S.2d 667, 764 N.E.2d 967.[10]
In Hall, the New York Court of Appeals once again held that “because a manual cavity search is more intrusive” a heightened standard must exist, regardless of a person’s felony status. Hall, 10 N.Y.3d at 310-11, 856 N.Y.S.2d 540, 886 N.E.2d 162. The court stated,
To advance to the next level required for a visual cavity inspection, the police must have a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity and the visual inspection must be conducted reasonably. If an object is visually detected or other information provides probable cause that an object is hidden inside the arrestee’s body, Schmerber dictates that a warrant be obtained before conducting a body *169 cavity search unless an emergency situation exists.
Id. The court noted that “visual cavity inspections ... cannot be routinely undertaken as incident to all drug arrests or permitted under a police department’s blanket policy that subjects persons suspected of certain crimes to [this] procedure[ ].” Id. at 311, 856 N.Y.S.2d 540, 886 N.E.2d 162.
Despite Supreme Court precedent and over two decades of this Circuit’s case law rejecting cavity searches, the district court stated and Appellees still contend that the rule was not clearly established until Hall, 10 N.Y.3d at 310-11, 856 N.Y.S.2d 540, 886 N.E.2d 162.[11] Regardless of Hall, the rule established therein was already clearly suggested by the Supreme Court and presaged by this Circuit. As the majority states, “we have repeatedly held that police may not conduct a suspicionless strip or body cavity search.” Even if no federal case prior to Hall stated the rule as explicitly applying to felony arrestees, the waterfall of decisions from Schmerber to Weber to Shain to Murcia made Hall’s and Samicola’s ultimate results a fait ac-compli — as reflections of this Circuit’s developing case law. In addition, even Ap-pellees are in accord with the district court and the New York Court of Appeals, recognizing that the rule on searches was “evolving” in this direction. Appellees’ Br. at 16. We have held that such foreshadowing requires the rule to be deemed clearly established. See Varrone, 123 F.3d at 78-79; Scott v. Fischer, 616 F.3d 100, 105 (2d Cir.2010). Accordingly, where the Supreme Court and this Court clearly foreshadowed a ruling on the issue, and other courts have also acknowledged this outcome, we should conclude that the rule was clearly established.
III.
Moreover, . “[e]ven in the absence of binding precedent, a right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what , he is doing violates that right. The unlawfulness must be apparent.” Young v. Cnty. of Fulton, 160 F.3d 899, 903 (2d Cir.1998) (citing Anderson, 483 U.S. at 640, 107 S.Ct. 3034) (internal quotation marks and alterations omitted). “Officials are held to have constructive knowledge of established law.” Salahuddin v. Coughlin, 781 F.2d 24, 27 (2d Cir.1986).
*170 The majority admits “we have repeatedly held that police may not conduct a sus-picionless strip or body cavity search” and also that “we can expect police officers to be familiar with black-letter law.” It further states, “[t]he officers do not dispute that the search violated Gonzalez’s right to be free from unreasonable searches.” However, still it somehow concludes that “reasonable officers could disagree as to whether that rule applied to those arrested for felony drug crimes.” I do not agree. An objectively reasonable officer, familiar with our case law, would certainly have understood that conducting Gonzalez’s sus-picionless body cavity search was unlawful. In addition to cases in this Circuit having consistently affirmed that cavity searches require heightened particularity, Hall pronounced, “[o]ur precedent on this point [as to felony arrestees] is unequivocal,” Hall, 10 N.Y.3d at 311, 856 N.Y.S.2d 540, 886 N.E.2d 162, thus demonstrating that officers with presumed knowledge of the law were clearly on notice.
In addition the initial search and pat down revealed no protruding object. Without more particularized suspicion— that the evidence sought was likely to be found within Gonzalez’s body — no officer could have concluded the cavity search wás reasonable. Unlike other circumstances where -a “small hard object” wás detected in a defendant’s initial strip search, Gonzalez’s initial strip search did not reveal any hard objects. Cf. People v. Clayton, 57 A.D.3d 557, 558, 868 NY.S.2d 303 (NY.App.Div.2008). Therefore, as in Schmerber, absent some more, clear indication of Gonzalez harboring drugs or other paraphernalia, the cavity search was a clear violation of plaintiffs Fourth Amendment rights, such that no officer could find it reasonable.
The facts here are also distinguishable from Clayton, 57 A.D.3d 557, 868 N.Y.S.2d 303, where' the searching officer testified that the defendant had a history of secreting contraband. Id. at 559, 868 N.Y.S.2d 303. Here, “Gonzalez was not a target of the police’s buy bust operation.” Gonzalez, 2011 WL 6010910, at * 1 n. 1. Therefore, we may assume the police had no background information on Gonzalez, his connection to the drug trade, or his history as to secreting contraband. Thus, the officers lacked requisite information for the body cavity search to be considered reasonable and unjustifiably still conducted a suspicionless search.
Here, the only thing giving police suspicion that Gonzalez was secreting contraband was"“defendant’s statement that he could get” drugs, having said, “I can get you whatéver you need.” However, that statement 'did not explain 1) what kind of drugs; 2) what amount; or 3) when the sale-would occur. As the Appellate Division in this case stated, “[Gonzalez’s] representation that he could ‘get you whatever you need’ was vague as to whether he actually possessed narcotics at the time and did not provide a specific, articulable basis to prompt the visual cavity inspection.” Gonzalez, 57 A.D.3d at 1222, 870 N.Y.S.2d 529. Tn fact, Gonzalez’s use of the future tense suggests the opposite corn elusion, that he had no drugs on his person and therefore could get it if requested. See Schmerber, 384 U.S. at 769-70, 86 S.Ct. 1826 (“the Fourth Amendment ... forbidfs] any such intrusions on the mere chance that desired evidence might be obtained.”)
Moreover,, even accepting that the strip search of the defendant was in accordance with police procedure, that, too, does not excuse police who should have known that to perform a strip search of the defendant absent reasonable suspicion was unjustified. See Hartline, 546 F.3d at 100-01 (“even if there were a departmental policy *171 of strip searching all arrestees without making any assessment of particularized circumstances, the relevant question is still: Do the circumstances of [the] arrest support a reasonable suspicion that she was secreting contraband on her person?”).
Accordingly, where the' unlawfulness was “apparent,” Anderson, 483 U.S. at 640, 107 S.Ct. 3034, and the searching officers suspicion was based on “vague” information, an objectively reasonable person in the officer’s position should have- known that this conduct was unreasonable and qualified immunity should therefore not apply.
IV.
The gross violation of personal privacy cannot be outweighed by the government’s interest where only a mere chance existed that the desired evidence would be obtained. “There is no iron curtain drawn between the Constitution and the prisons of this country.” Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Included in those constitutional rights “when it comes to the Fourth Amendment,” is the rule that “the home is the first among equals.” Florida v. Jar-dines, — U.S.-, 133 S.Ct. 1409, 1413-14, 185 L.Ed.2d 495 (2013). It is at the Amendment’s “ ‘very core.’ ” Id. As a person’s body is the ultimate home, it must be at the nucleus of the Amendment. Thus, an invasion into the body is just as much— if not even more — extreme in practice than an intrusive entry into a home. See United States v. Martinez-Fuerte, 428 U.S. 543, 561, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (explaining that body searches are “ordinarily afforded the most stringent Fourth Amendment protection”). In fact, the Court has recently reaffirmed its commitment to the reasonableness inquiry and Schmerber rule, as touchstones of the Fourth Amendment analysis. See McNeely, 133 S.Ct. at 1565. (“We have never retreated, however, from our recognition that any compelled intrusion into the human body implicates significant, constitutionally protected privacy interests.”)
Therefore, these protections stand regardless of a person’s arrestee status. The proscription against unreasonable body cavity searches, held as a consistent and core rule of the Fourth Amendment, should not be ignored simply because of an arbitrary distinction as to a person’s status. To hold otherwise suggests that body cavity searches are so commonplace that we do not treat them as the ultimate invasive search. See Vemonia, 515 U.S. at 672, 115 S.Ct. 2386 (stating these are the “most intrusive searches”). Such a conclusion is unacceptable in any society that takes privacy, dignity, and bodily integrity seriously.
V.
For these reasons, I respectfully dissent as to Part III of the majority’s opinion.

. Although I agree with the majority’s conclusion in Part II, that arguable probable cause exists in this instance, I must stress: this is a close case. Arguable probable cause exists where "officers of reasonable competence could disagree on the legality of [their] action [in this] particular factual context.” Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir.2007) (internal quotation marks omitted). Where the “only facts known to-the officers at the time of the arrest,” were that (1) the location was known for drug sales and (2) Gonzalez said he could get drugs, see Maj. Op. at 155 (emphasis added), the question of arguable probable cause is indeed a close question. If the officers had not been able to rely on the second factor, that Gonzalez said he could get drugs, officers of reasonable competence could not disagree on the illegality of their action.
Officers must rely on something more than the location's reputation in order to find reasonable suspicion. See Holeman v. City of New London, 425 F.3d 184, 190 (2d Cir.2005) (stating that driving in circuitous route in high-crime area at 4:30 a.m. not enough, standing alone, to support reasonable suspicion); United States v. McCargo, 464 E.3d 192, 197 (2d Cir.2006) ("Reasonable suspicion requires considerably less of a showing than probable cause.”). If a location's reputation as a "high crime area” is not enough to advance reasonable suspicion, a location’s reputation as a "high drug area" certainly cannot be enough to suggest probable cause, without more information. Although officers are allowed to take a location’s reputation into consideration, see United States v. Muhammad, 463 F.3d 115, 122-23 (2d Cir.2006), it must be coupled with some other indication, such as flight from the scene, see id., or the ■ prevalence of drug sales at a particular address in order to conclude that arguable probable cause existed. See Martinez v. City of Sahenectady, 115 F.3d 111 (2d Cir.1997) (concluding probable cause existed where officers previously knew ábout drug sales from plaintiff's specific apartment address). In this case, the general 'location’s prevalence in drug sales can therefore not be enough to create arguable probable cause or else all residents who live in high drug or high crime areas would be vulnerable to arbitrary arrest. Nonetheless, I agree that we may conclude arguable probable cause existed in this instance because the officers in this case could couple the location’s reputation with Gonzalez’s statement.

. In resolving the question of qualified immunity, a court must decide whether the alleged conduct was a violation of a constitutional right and whether the right at issue was "clearly established” at the time of defendant’s alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Here, no one disputes that the search violated Gonzalez’s right to be free from unreasonable searches; the defendant's position is only that the right violated was not clearly established. After Gonzalez was arrested he was told to -get on the floor and was searched, but the pat down yielded nothing. Plaintiff was handcuffed and taken to police headquarters, where police conducted a full cavity search. Officers stated that Gonzalez was subjected to this search only because he was arrested on a narcotics offense. According to the Schenectady Police Department’s policy, police required Gonzalez to undress completely, turn around, put his hands on the wall, spread his feet, and use his hands to spread his buttocks. Before taking off his boxers, officers had not identified any contraband. Only after spreading his buttocks, officers located and removed a bag with drugs. The parties disagree as to whether the officers or Gonzalez removed the bag.

. The majority states that the question here regards a strip search or visual body cavity search. According to the Appellees, Gonzalez himself removed the bag from his buttocks. According to the Gonzalez, one of the officers removed the bag from his buttocks.

. The Court clarified a "clear indication” to mean "the necessity for particularized suspicion that the evidence sought might be found within the body of the individual.” United States v. Montoya de Hernandez, 473 U.S. 531, 540, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985).

. The Court in Bell did not speak to the issue of whether arrestees were subject to the same standard.

.In essence, this standard required more than an "inchoate and unparticularized suspicion or 'hunch.' ” Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). .Instead, the reasonable suspicion standard requires individualized suspicion, specifically directed to the person targeted for the strip search, and reasonable cause to believe that drugs or other contraband are concealed in the particular place to be searched with some indicia of reliability. Hartline, 546 F.3d at 100.

. Though we did also state, "[t]here is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates.” Shain, 273 F.3d at 64 n. 2.

. In a footnote, we stated that "we do not rely solely on Sham's status as a pretrial detainee” in order to find that this' search violated the *167 Fourth Amendment. Shain, 273 F.3d at 66 n. 3.

. The majority tries to disclaim these holdings because they were decided by a single judge in the Southern District of New York. However, I know of no case law which holds that the singularity of a judge undermines the weight of the decision. Regardless this judge was not alone. Other judges in our district courts have observed this rule. See Sims v. Farrelly, No. 10 Civ. 4765, 2013 WL 3972460, at *8 (S.D.N.Y. Aug. 2, 2013); Sorrell v. Inc. Vill. of Lynbrook, 2012 WL 1999642, at *6 (E.D.N.Y. June 4, 2012); McBean v. City of New York, 260 F.R.D. 120, 130 (S.D.N.Y.2009); Harriston v. Mead, No. 05 CV 2058, 2008 WL 4507608, at *3 (E.D.N.Y. Sep. 30, 2008).

. The district court also cited to Gamer for the proposition that “[m]any crimes classified as misdemeanors, or nonexistent, at common law are now felonies,” and "numerous misdemeanors • involve conduct more dangerous . than many felonies.” Murcia', 226 F.Supp.2d at 494..

. Since then, state courts have continued to hold that rule. For example, more recently, that rule was applied in a case with a similar fact pattern to the case at hand. In People v. Robinson, the Supreme Court of New York County found that although police had probable cause to arrest the defendant after observing him sell cocaine, the police’s strip search was unreasonable. People v. Robinson, 39 Misc.3d 1234(A). 2013 WL 2396064, at *3 (N.Y.Sup.Ct.2013) ("There was no evidence that the [search] was based on any particularized facts that led police to believe that this particular defendant was concealing evidence beneath his clothes.”).

. The majority correctly clarifies the present question is not just whether there was a clearly established rule but whether there was a clearly established federal constitutional right. Therefore, Hall is not determinative. But what the majority fails to notice is that Hall stated it was only reaffirming pre-existing law of the Supreme Court. The New York court recognized, "the rule announced in Schmer-ber is unequivocal ... searches involving intrusions beyond the body’s surface” require some stricter standard. Hall, 10 N.Y.3d at 313, 856 N.Y.S.2d 540, 886 N.E.2d 162 (citing Schmerber, 384 U.S. at 769, 86 S.Ct. 1826). Hall thus clarified it was not a new rule but a directive from the Supreme Court’s holding in Schmerber. Id. at 310, 856 N.Y.S.2d 540, 886 N.E.2d 162 ("Schmerber ... dictates that a more stringent standard be applied to a physical search of an arrestee's body cavity”). Moreover, that case opined that the state court had itself adopted this rule previously in More. The Hall court stated, "[in o]ur most recent decision addressing a search into a person’s body[,] People v. More, 97 N.Y.2d 209, 738 N.Y.S.2d 667, 764 N.E.2d 967 (2002).... We recognized that a search of this nature was at least as intrusive as the blood test procedures in Schmerber ... [and] we held that the removal of the object from the defendant’s rectum without prior judicial authorization violated the Fourth Amendment.” Hall, 10 N.Y.3d at 310, 856 N.Y.S.2d 540, 886 N.E.2d 162 (internal quotation marks and alteration omitted).